Harold MUNYAN, Claimant/Appellant
Below, Appellant,

v.

DAIMLER CHRYSLER CORPO-
RATION, Employer/Appellee
Below, Appellee.

No. 149, 2006.

Supreme Court of Delaware.

Submitted: July 19, 2006.
Decided: Sept. 29, 2006.

Matthew M. Bartkowski, of Kimmel, Carter, Roman & Peltz, P.A., Bear, DE, for Appellant.

Scott L. Silar, of Marshall, Dennehey, Warner, Coleman & Coggin, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, and HOLLAND and JACOBS, Justices.

JACOBS, Justice:

Harold Munyan ("Munyan"), employee-appellant, appeals from a Superior Court decision affirming the denial by the Industrial Accident Board ("IAB" or "Board") of Munyan's petition to determine additional compensation due. Munyan claims that the Board erroneously discredited the testimony of his expert witness on the ground the expert had relied on independent testing facility results to determine Munyan's permanent impairment rating. That error, Munyan claims, requires a remand of this case to enable the Board to properly re-evaluate the testimony of the two competing experts, and conclude which of those experts is more persuasive. Because substantial evidence supports the IAB's decision and no legal error was made, Munyan's claims are without merit. Therefore, we affirm.

### FACTS[1]

Munyan was a 50 year-old technician at Daimler Chrysler. On May 19, 2003, during Munyan's shift, a flat bed truck struck his station, forcing a supply rack into his right leg and knocking him over. Munyan received treatment at the Christiana Hospital Emergency Room, where he was placed in a light cast, given pain medication, and referred to his family physician. Munyan's physician ordered physical therapy, and after two to three weeks, Munyan returned to work.

1. The following recitation of the facts is adopted largely from the Superior Court opin-
ion in this case.

On October 25, 2004, Munyan filed a Petition to Determine Additional Compensation Due. He sought an award of permanent impairment benefits for a 10% permanent impairment to his right lower extremity resulting from the 2003 work accident. Daimler Chrysler, the employer-appellee, contested the petition on the ground that Munyan had suffered no permanent impairment.

On April 20, 2005, a hearing on Munyan's petition was held before an IAB hearing officer. Munyan testified that although physical therapy had helped him, his leg would tighten up during the work day and in the evening. Moreover, he experienced pain and a burning sensation in his thigh during normal activities. Munyan also had a limp that bothered him. Munyan testified that he takes anti-inflammatory drugs as needed, that his symptoms worsen with weather changes and extended work hours, and that he no longer plays sports because of aging.

Two experts testified by deposition: Dr. John Hocutt, Jr., on behalf of Munyan; and Dr. Elliott Leitman, for Daimler Chrysler. Dr. Hocutt testified that he reviewed Munyan's medical records, an MRI taken in June 2003, and Dr. Leitman's report. After examining Munyan on August 31, 2004, Dr. Hocutt found that Munyan was tender in the mid-right quadriceps muscle group, and that he exhibited a hardness of that muscle group in the mid-anterior region and a defect in the quadriceps. Dr. Hocutt also found that Munyan had suffered a significant loss of knee flexion because he was 30 centimeters off full extension on the right quads, and 20 centimeters off the left quads.

During his examination, Dr. Hocutt noted that Munyan could walk and move his

leg with a little resistance beyond gravity. Dr. Hocutt opined that there was deterioration on the hip joint, possibly causing bursitis, which would be consistent with the injury Munyan had suffered. ·Dr. Hocutt diagnosed Munyan as having had a chronic right thigh contusion of his vastus medialis muscle, and a muscle tear in the quads. Those injuries were permanent, Dr. Hocutt opined, because the symptoms have persisted and are stable.

Dr. Hocutt sent Munyan to be tested at Iso–Diagnostic in Pennsylvania. That independent facility determined that Munyan's right side flexion was 63% of normal of the quads. Referring to Table 17–10 of the AMA Guides, Dr. Hocutt testified that that percentage corresponded to a 10% permanent and partial impairment for the right lower extremity. That strength deficit, Dr. Hocutt testified, corresponded to a 12% permanent impairment under another table (17–8) of the AMA guide, but in Dr. Hocutt's view, that rating was higher than what was justified by Munyan's condition. Dr. Hocutt also reviewed Dr. Leitman's report and concluded that based on Dr. Leitman's strength deficit measurements and the AMA guide, Munyan had a 12% permanent impairment (which, Dr. Hocutt had previously noted, was not justified by the injury or symptoms exhibited).

During cross-examination, Dr. Hocutt testified that he had not been present during Iso–Diagnostic's evaluation of Munyan, but he had double-checked what Iso–Diagnostic did. Dr. Hocutt also testified that based on Dr. Leitman's measurements of Munyan's knee flexion, there was a full range of motion, and a 0% impairment rating would be appropriate.

Dr. Leitman testified by deposition on behalf of Daimler Chrysler. Dr. Leitman examined Munyan on February 16, 2005, and found that Munyan had pain on deep palpation, very little atrophy, and essentially a full range of motion in his knee without significant weakness. From manual muscle testing, Dr. Leitman determined that Munyan had a strength rating of 4 out of 5 on the right leg and 5 out of 5 on the left.

After reviewing Munyan's MRI, Dr. Leitman diagnosed Munyan as having a contusion of the quadriceps tendon and some tightness of the thigh muscles. He found Munyan to be 98% normal, however, and concluded that with continued stretching, Munyan should be fine in a few more weeks. Using the AMA Guide criteria, Dr. Leitman testified that Munyan did not have a permanent impairment, because his strength measurements were not significantly abnormal, and his range of motion was normal.

The Board Hearing Officer credited Dr. Leitman's testimony over that of Dr. Hocutt. The Board found Dr. Leitman's testimony more persuasive, because his examination occurred closer in time to the hearing and presented a more accurate portrayal of Munyan's then-existing condition. The Board also found Dr. Leitman's report to be consistent with the AMA Guidelines, indicating no loss of range of motion, weakness or atrophy. Moreover, the Board found that, although Munyan may experience pain, pain unaccompanied by loss of use is not compensable. The Board found no loss of use because Munyan had returned to his job. The IAB was not persuaded by Munyan's testimony about activities in which he could no longer participate. Lastly, the Board held that it could not credit Dr. Hocutt's range of motion testimony, because Dr. Hocutt relied upon testing results from an independent third party that could not be cross-examined by the employer, rather than conducting the examination himself.

Ultimately, the Board was persuaded that Munyan had improved by the time of

Dr. Leitman's examination. Because the Board found that Munyan had failed to bear his burden of proving a compensable loss of use resulting from the accident, it denied Munyan's Petition for Additional Compensation Due. On appeal, the Superior Court affirmed the Board's decision, finding that substantial evidence supported the IAB's conclusion that Munyan had not suffered a permanent impairment. The Superior Court noted that the Board's discounting of Dr. Hocutt's opinion (for having relied on a third party's results) was overbroad, because Delaware Rule of Evidence 703 permits experts to rely upon diagnostic testing by others to help them formulate their own opinions. Nonetheless, the Superior Court explained, that error did not alter its determination that substantial evidence supported the Board's conclusion, since it is the Board's role to resolve testimonial conflicts. Here, the Board credited Dr. Leitman's testimony and based its decision on his report. Munyan appeals from that ruling.

### ANALYSIS

■ Munyan claims that the Board erroneously discounted Dr. Hocutt's testimony, and that reversal is required so that the IAB may re-determine the doctors' credibility. Specifically, Munyan contends that the IAB erred in denying his petition because: (1) Dr. Hocutt was entitled to use third party evaluations in constructing his report and opinion on Munyan's condition;

(2) Dr. Hocutt was no less credible than Dr. Leitman, because the two doctors used the same tables and charts, and Dr. Leitman's strength measurements would have indicated impairment on those charts; (3) the Board should not have considered Munyan's ability to perform his job; and (4) there was substantial evidence of pain and loss of activity resulting from that pain.

■ The limited role of this Court, and the Superior Court, when reviewing an appeal from the IAB, is to determine whether the Board decision is supported by substantial evidence and is free from legal error.[2] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[3] This Court does not weigh the evidence, determine questions of credibility, or make its own factual findings.[4] Where substantial evidence supports the administrative decision, this Court must affirm the ruling unless it identifies an abuse of discretion or a clear error of law.[5] Questions of law are reviewed de novo.[6]

■ If the medical evidence is in conflict, the Board is the finder of fact and must resolve the conflict.[7] Where the Board adopts one medical opinion over another, the opinion adopted by the Board constitutes substantial evidence for purposes of appellate review.[8] Moreover, as the Board Hearing Officer correctly noted, evidence of pain without loss of use is not a

2. *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del.1965).

3. *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del.1993).

4. *Johnson*, 213 A.2d at 66.

5. *Digiacomo v. Bd. of Public Educ.*, 507 A.2d 542, 546 (Del.1986).

6. *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del.1998) (citing *State v. Cephas*, 637 A.2d 20, 23 (Del.1994)).

7. *General Motors Corp. v. McNemar*, 202 A.2d 803 (Del.1964), *overruled in part on other grounds by Reynolds v. Continental Can Co.*, 240 A.2d 135, 136 (Del.1968).

8. *Reese v. Home Budget Center*, 619 A.2d 907, 910 (Del.1992).

compensable permanent impairment.[9]

Contrary to Munyan's argument, the Board did not accept Dr. Leitman's professional opinion that Munyan suffered no permanent impairment solely because the Board had rejected the testimony of Dr. Hocutt. Here, the Board affirmatively credited Dr. Leitman's opinion because it found that his examination had occurred closer in time to the hearing and that it represented a more accurate picture of Munyan's condition.

Munyan also characterizes the Board's acceptance of Dr. Leitman's testimony over Dr. Hocutt's as "a close call" requiring reversal. The record shows otherwise. The Board Hearing Officer stated: "when forced to choose between the experts regarding the extent of impairment, if any, I find the opinion of Dr. Leitman more persuasive." From that finding it appears that the Board had determined—from Munyan's lack of testimony about any loss of use—that Munyan had failed to meet his burden. The Board's own observations of Munyan in his testimony, and its reliance upon the medical opinion presented by Dr. Leitman constituted substantial evidence supportive of the Board's conclusion that Munyan's condition had improved and that Munyan was not entitled to additional benefits.

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court is affirmed.

---

**9.** Board Op. at 7 (A–59) (citing *Wilmington Fibre Specialty Co. v. Rynders,* 316 A.2d 229, 232 (Del.Super.1974)).