# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

MARY ANNE MACFADYEN, )
                             )
    Claimant-Below, Appellant, )
                             )
    v. )     C.A. No. N15A-05-001 ALR
                             )
TOTAL CARE PHYSICIANS, )
                             )
    Employer-Below, Appellee. )

Submitted: November 2, 2015
Decided: December 15, 2015

***On Appeal from Decision of the***
***Industrial Accident Board***

**AFFIRMED**

**<u>MEMORANDUM OPINION</u>**

Michael R. Ippoliti, Esq., Law Office of Michael R. Ippoliti, Attorney for Claimant-Below Appellant

Aman K. Sharma, Esq., Law Offices of Chrissinger & Baumberger, Attorney for Employer-Below Appellee

**ROCANELLI, J.**

Mary Anne MacFadyen ("Claimant") was employed as an administrative assistant with Total Care Physicians ("Employer") for approximately ten (10) years. Claimant was injured at work in September 2011 and, therefore, was entitled to compensation.

On May 8, 2014, Claimant filed two Petitions to Determine Additional Compensation Due. In Claimant's first petition, Claimant sought a finding that she had complex regional pain syndrome ("CRPS") of the upper left extremity and a finding of recurrence of temporary total disability ("TTD"). In Claimant's second petition, Claimant sought a finding that she sustained a twenty-four percent (24%) permanent impairment to the upper left extremity.

A hearing on the merits on both petitions was held before the Industrial Accident Board ("Board") on March 19, 2015. The Board issued a decision on April 2, 2015 ("Board's Decision") determining that Claimant met her burden in establishing that she had CRPS of her upper left extremity and recurrence of TTD. However, the Board determined that Claimant failed to meet her burden that she sustained a twenty-four percent (24%) permanent impairment to her upper left extremity and instead awarded Claimant a four percent (4%) permanent impairment.

Claimant filed a limited appeal to this Court of the Board's Decision awarding Claimant four percent (4%) permanency rather than the twenty-four

2

percent (24%) permanency requested by Claimant. Claimant also appeals the Board's decision to permit Employer to utilize photographs taken from Claimant's public Facebook profile as impeachment evidence without prior notice to Claimant. For the reasons set forth below, the Board's Decision is hereby **AFFIRMED**.

## Summary of the Board's Decision

Claimant was employed as an administrative assistant for Employer for approximately ten (10) years, including in 2011 when Claimant suffered an injury at work to her left upper extremity. In September 2011, Dr. Robert Palandjian, Claimant's general physician, diagnosed Claimant with carpal tunnel syndrome ("CTS") and soon thereafter, Dr. Douglas Patterson, an orthopedic specialist, also diagnosed Claimant with CTS, cubital tunnel syndrome, and de Quervains tenosynovitis. In October 2011, Dr. Patterson additionally diagnosed Claimant with ulnar side wrist pain. Claimant received injections to address her pain. Nevertheless, Claimant continued to experience pain.

In March 2012, Claimant underwent four surgical procedures involving Claimant's left elbow, left wrist, and left ring finger. Following the procedures, Claimant's condition briefly improved and Claimant returned to work in May 2012 for Employer in light duty status. On April 7, 2013, Dr. Peter Bandera, Claimant's

3

pain management physician, placed Claimant on "no-work" status because Claimant's symptoms worsened related to a CRPS condition and residual CTS.

Following the March 19, 2015 hearing, the Board found in its Board Decision that Claimant's injuries were compensable and Claimant's CRPS condition and residual CTS were causally related to Claimant's original compensable injuries. The Board further found that Claimant suffered a compensable recurrence of TTD effective April 7, 2013. Specifically, the Board found that Claimant suffered a four percent (4%) permanent impairment to her left upper extremity. In making its decision, the Board considered the testimony of Claimant, and the depositions of two medical experts who each physically examined Claimant and reviewed Claimant's medical records for purposes of rendering an opinion on permanent impairment: (1) Claimant's expert, Dr. Jeffrey Meyers, a physician board certified in physical medicine and rehabilitation and (2) Employer's expert, Dr. Wayne Kerness, a board certified orthopedic surgeon.[1]

## Standard of Review

The Court's appellate review of a Board decision is limited. The Court's only role is to "determine whether the decision of the Board is supported by

---

[1] Although the Board considered testimony from Claimant's other physicians for purposes of causation, the Board relied only on the opinions of Dr. Meyers and Dr. Kerness with respect to Claimant's permanency claim.

substantial evidence and free of legal error."[2]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]   If substantial evidence in support of the Board's decision exists, then the Board's decision stands,[4] even if the Court would reach a contrary conclusion.[5] In making its determination, the Court reviews the record below in the light most favorable to the prevailing party, here Employer.[6]   The Court will not weigh the evidence, determine credibility, or make its own factual findings.[7]   The Court defers to the specialized competence and experience of the Board.[8]   Absent legal error, which is reviewed *de novo*,[9] the standard of review is abuse of discretion.[10]   A Board's discretionary ruling will not be disturbed on appeal unless it is based on "clearly unreasonable or capricious grounds."[11]   "The Board has abused its discretion only when its decision has exceeded the bounds of reason in view of the circumstances" so as to produce injustice.[12]

---

[2] *Standard Distrib., Inc. v. Hall*, 897 A.2d 155, 157 (Del. 2006); *see also Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

[3] *Id.* (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981) (quoting *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

[4] *Person-Gaines*, 981 A.2d at 1161.

[5] *H&H Poultry v. Whaley*, 408 A.2d 289, 291 (Del. Super. 1979).

[6] *Bermudez v. PTFE Compounds, Inc.*, 2006 WL 2382793, at *3 (Del. Super. Aug. 16, 2006).

[7] *Person-Gaines*, 981 A.2d at 1161; *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

[8] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[9] *Person-Gaines*, 981 A.2d at 1161.

[10] *Id.*

[11] *K-Mart, Inc. v. Bowles*, 1995 WL 269872, at *2 (Del. Super. Mar. 23, 1995).

[12] *Person-Gaines*, 981 A.2d at 1161 (internal quotation omitted); *see also K-Mart, Inc.*, 1995 WL 269872, at *2.

# Discussion

This Court must decide whether there is substantial evidence in the record to support the Board's Decision to award Claimant four percent (4%) permanency. This Court must also determine if the Board properly permitted Employer to utilize photographs taken from Claimant's public Facebook as impeachment evidence without prior notice to Claimant or whether admission of that evidence was an abuse of the Board's discretion.

## A. The Board's Decision to award Claimant four percent permanency is supported by substantial evidence.

If medical evidence is in conflict, the Board, as fact finder, resolves the conflict.[13] It is well-established that, when parties present competing experts, the Board may rely on either expert's opinion.[14] Where the Board adopts one medical opinion over another, the opinion adopted by the Board constitutes substantial evidence for purposes of appellate review.[15] "It is the duty of the Board, not a physician, to fix a percentage to a claimant's disability based on the evidence before it."[16]

---

[13] *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).
[14] *Harasika v. State*, 2013 WL 1411233, at *4 (Del. Super. Feb. 28, 2013) (referring to *San Juan v. Mountaire Farms*, 2007 WL 2759490, at *4 (Del. Super. Sept. 18, 2007)).
[15] *Person-Gaines*, 981 A.2d at 1161; *Munyan*, 909 A.2d at 136.
[16] *Turbitt v. Blue Hen Lines, Inc.*, 711 A.2d 1214, 1215 (Del. 1998).

The record reflects that the Board was not persuaded by Dr. Meyers, the expert presented by Claimant. Rather, the Board accepted the expert testimony of Dr. Kerness, who was presented by Employer. There was substantial evidence to support the Board's Decision. Specifically, Claimant's expert, Dr. Meyers, assigned a twenty-four percent (24%) rating to Claimant's permanency impairment; however, the Board found that the twenty-four percent (24%) rating was too high in relation to Claimant's actual functional limitations. Indeed, in its Board Decision the Board provide that the "Board was concerned that Dr. Meyer's rating process seemed to focus more on the complexity of the 2012 surgical procedures and the multiple areas involved, as opposed to a true focus on Claimant's actual loss of use following her post-operative recovery." For example, the Board noted that Dr. Meyers focused on certain symptoms of CRPS, such as increased hair growth and shininess in the upper left extremity, rather than explaining Claimant's actual limitations with respect to permanent impairment.

The Board described as "perhaps most troubling" that Dr. Meyers testified in the deposition that he placed Claimant in a Class II category for impairment and provided that the Claimant "can use the involved extremity for self-care and can grasp and hold objects with difficulty but has no digital dexterity." However, according to the Board, Dr. Meyers failed to adequately explain how he came to such conclusions or otherwise make clear how often Claimant's injured extremity

7

would be low or non-functioning compared to when Claimant would be highly functioning.[17]

On the other hand, following his physical examination of Claimant, Employer's expert, Dr. Kerness, found there were no objective findings other than Claimant's surgical scarring. Claimant's left shoulder had normal range of motion in all planes as well as full flexibility of the left elbow and Claimant's left wrist showed full range of motion. Claimant exhibited no discomfort during Dr. Kerness's physical examination. Claimant also admitted to Dr. Kerness that she was not having any difficulty performing her daily activities, including cleaning, cooking, etc. Dr. Kerness concluded that Claimant could return to regular duty work without any restrictions and in his opinion, Claimant's rating for permanent impairment was only a total of four percent (4%).[18] Although the Board did not find Dr. Kerness's opinion "all that convincing either" as he provided little explanation for his rating, the Board accepted that Claimant had suffered four percent (4%) total impairment.

---

[17] This is not to say that the Board did not find Dr. Meyers at all credible. Indeed, the Board found Dr. Meyer's opinion with respect to causation of Complainant's condition persuasive.

[18] Dr. Kerness specifically concluded that Claimant's permanent impairment is a two percent (2%) rating attributable to left cubital tunnel syndrome and another two percent (2%) attributable to CTS.

Although the testimony of Dr. Meyers and Dr. Kerness was in conflict, the Board, as fact finder, was in the best position to resolve the conflict.[19] The Board had the authority to rely on either expert's opinion.[20] It is not within this Court's purview to determine the credibility of the witnesses or make factual findings.[21] Instead, it is well-established that if the Board adopts one medical opinion over another, the opinion adopted by the Board constitutes substantial evidence for appellate review.[22]

Accordingly, there was substantial evidence for the Board's Decision where, with respect to Claimant's permanency claim, the Board found Dr. Kerness' medical opinion more credible than Dr. Meyer's medical opinion considering Dr. Meyer's failure to explain his conclusions and where the burden was on Claimant to demonstrate such permanency such that Claimant failed to meet her burden.

## B. The Board did not abuse its discretion in permitting Employer to utilize Claimant's Facebook photographs as impeachment evidence.

Claimant argues that the Board erred in permitting Employer to use Claimant's public Facebook photographs of Claimant holding her grandson with her injured arm and hand as impeachment evidence against Claimant where Employer failed to comply with the notice requirement of Board Rule 9. Claimant

---

[19] *See Munyan*, 909 A.2d at 136.
[20] *See Harasika*, 2013 WL 1411233, at *4 (referring to *San Juan*, 2007 WL 2759490, at *4).
[21] *Person-Gaines*, 981 A.2d at 1161; Johnson, 213 A.2d at 66.
[22] *Person-Gaines*, 981 A.2d at 1161; *Munyan*, 909 A.2d at 136.

9

argues that the admission of Claimant's Facebook images was prejudicial to Claimant and, therefore, the Board's Decision must be reversed.

As a threshold matter, although Claimant states that Claimant's Facebook photographs were admitted into evidence, Claimant is incorrect. The record reflects that, during the hearing, the Board considered Claimant's objection, took a recess to discuss the matter, and then determined that the photographs would not be admitted into evidence and would only be utilized for impeachment purposes. The Board reasoned that impeachment was appropriate because Claimant testified that she cannot hold her grandchildren or even a teacup with her injured arm and hand; however, the photographic evidence was to the contrary. In stating that the photographs limited purpose was for impeachment, the Board noted that accordingly, it would give the photographs lesser weight than if they were introduced as substantive evidence.

Board Rule 9(B)(5)(f) requires pre-trial memorandum to contain "notice of the intent to use any movie, video or still picture and either a copy of the same or information as to where the same may be viewed."[23] Board Rule 14(C) gives the Board broad discretion with respect to evidentiary decisions. Particularly, Rule 14(C) provides:

_____

[23] Industrial Accident Board Rule 9(B)(5)(f).

> The rules of evidence applicable to the Superior Court of the State of Delaware shall be followed insofar as practicable; however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. *The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion.*[24]

While Board Rules are to be enforced by this Court, the Court recognizes an exception to the strict enforcement of a Board Rule where "fairness so requires."[25] Moreover, this Court's primary focus for review is on the Board's legal reasoning and the not the Board's evidentiary rulings.[26]

Claimant relies on *Harasika v. State* for her argument that Employer was required to give Claimant notice of its intent to use the photographs even for impeachment purposes.[27] In *Harasika*, an employee suffered an injury to her left ring finger at work.[28] The employee filed a Petition for Additional Compensation Due related to alleged ongoing injuries as a result of her work accident; however, following a hearing, the Board determined that the employee did not meet her burden in establishing that the injuries were a result of the original work accident.[29] At the Board hearing, the employee sought to introduce photographs to impeach an

---

[24] Industrial Accident Board Rule 14(C) (emphasis added).
[25] *K-Mart, Inc.*, 1995 WL 269872, at *2.
[26] *Walden v. Georgia-Pac. Corp.*, 1994 WL 534907, at *3 (Del. Super. Aug. 19, 1994).
[27] 2013 WL 1411233 at *1, *6-7.
[28] *Id.* at *1.
[29] *Id.* at *3.

expert physician's testimony, which suggested that the employee "provided inconsistent accounts of her mechanism of injury."[30] At the hearing, the Board did not permit the employee to use the photographs.[31] On appeal, the Superior Court affirmed the Board's decision.[32] The Superior Court noted that the employee failed to provide proper notice to use the photographs for impeachment evidence and held that the Board was "well within its authority in refusing to permit [the employee's] use of these photographs."[33]

While Claimant proposes that *Harasika* provides for a strict interpretation of Board Rule 9 even with respect to impeachment, Claimant fails to consider that the Court in *Harasika* did not disrupt the Board's decision. Given this Court's limited role in Board decisions, particularly with respect to evidentiary considerations, this Court also finds that the Board was well within its authority to permit Employer to use Claimant's Facebook photos as impeachment evidence in this context. Particularly, the Board's decision to permit Employer to use Claimant's Facebook photos as impeachment evidence was not "clearly unreasonable or capricious"[34] nor did it "exceeded the bounds of reason in view of the circumstances" or produce

---

[30] *Id.*
[31] *Id.*
[32] *Id.* at *7.
[33] *Id.* at *6.
[34] *K-Mart, Inc*, 1995 WL 269872, at *2.

12

injustice.[35]   Rather, in view of the circumstances, the Board was well within its authority to permit Employer to use Claimant's public Facebook photographs as impeachment evidence because Claimant herself testified that she cannot hold her grandchildren with her injured arm.   Accordingly, fairness so required that Employer could impeach Claimant, including with photographs of Claimant holding her grandchildren with her injured arm.

Moreover, there was substantial evidence to support the Board's Decision to award Claimant four percent (4%) permanency independent of the Board's consideration of Claimant's Facebook photographs as impeachment evidence as discussed above.   Therefore, the use of these photographs as impeachment evidence did not produce injustice.   According to the Board's "Statement of Determination," the Board's Decision with respect to permanency was based on Dr. Kerness' opinion.  Dr. Kerness' opinion did not consider Claimant's Facebook photographs.

---

[35] *Person-Gaines*, 981 A.2d at 1161 (internal quotation omitted); *see also K-Mart, Inc.*, 1995 WL 269872, at *2.

## CONCLUSION

The Court has examined the record below and determined that substantial evidence supports the Board's Decision and the Board did not abuse its discretion. Accordingly, the Board's Decision must be and hereby is **AFFIRMED**.

**IT IS SO ORDERED** this 15th day of December, 2015.

*Andrea L. Rocanelli*

_____

The Honorable Andrea L. Rocanelli