# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARIA PENA GONZALEZ,    )
    )    C.A. No. K21A-01-001 RLG
Appellant,    )
    )
PERDUE FARMS, INC.,    )
    )
Appellees.    )

Submitted:  November 19, 2021
Decided:  January 14, 2022

## MEMORANDUM OPINION AND ORDER

**Upon Appellant's Appeal from a Decision of the
Industrial Accident Board – AFFIRMED.**

James R. Donovan, Esq., Doroshow, Pasquale, Krawitz & Bhaya, Dover, Delaware. *Attorney for Appellant Maria Pena Gonzalez.*

Andrea C. Panico, Esq., Tybout, Redfearn & Pell, Wilmington, Delaware. *Attorneys for Appellee Perdue Farms, Inc.*

**GREEN-STREETT, J.**

## I. Introduction

Maria Pena Gonzalez (the "Claimant") filed an appeal with this Court seeking review of the Industrial Accident Board's (the "Board" or the "IAB") decision denying her Petitions to Determine Additional Compensation Due. Because there is substantial evidence to support the denial of Claimant's Petitions, the decision of the Board is **AFFIRMED**.

## II. Factual and Procedural Background

### A. Claimant's Injuries and Medical Treatment

Claimant was involved in two work-place accidents while employed at Perdue Farms ("Perdue").[1] The first accident occurred on March 15, 2017. The second accident occurred on February 5, 2019. Claimant contends that, as a result of both work-place accidents, she suffered permanent injury to (1) her right lower extremity, and (2) her low back. Claimant filed two Petitions to Determine Additional Compensation Due. The instant dispute centers around the permanency of Claimant's injuries.

### 1. Claimant's First Accident

On March 15, 2017, Claimant was struck by a coworker's car in the Perdue parking lot.[2] A subsequent MRI revealed injury to Claimant's knee and arthritis in

---

[1] Record, "Decision on Petitions to Determine Additional Compensation Due," at 2.

[2] Id.

her spine.[3] In May of 2017, Claimant underwent arthroscopic surgery on her right knee and a chondroplasty of the lateral tibial plateau.[4] Dr. Richard DuShuttle ("Dr. DuShuttle") performed the surgery.[5]

Dr. DuShuttle also oversaw Claimant's post-operative care.[6] In post-operative visits with Dr. DuShuttle, Claimant complained of intermittent knee pain and stiffness, which varied depending on her activity level.[7] Although Claimant initially reported "problems with her back,"[8] Dr. DuShuttle believed that, by May of 2017, her low back pain had "essentially resolved."[9] Claimant was eventually able to return to work full-time as an assembly line worker at Perdue.[10]

## 2. Claimant's Second Accident

On February 5, 2019, Claimant was injured in a second work-place accident.[11] While working at Perdue, Claimant slipped on a piece of wood and landed on her

---

[3] Id.

[4] Id. at 2-3.

[5] Id. at 3.

[6] See Record, "Claimant's Exhibit #1."

[7] Id. at 10:7-13.

[8] Id. at 10:14-15.

[9] Id. at 10:14-16.

[10] Record, "Employer's Exhibit #1," at 10:12-13.

[11] Record, "Decision on Petitions to Determine Additional Compensation Due," at 3.

right knee.[12] Claimant underwent another MRI, which revealed further injury to her knee.[13] She was instructed to use crutches, attend physical therapy, and take anti-inflammatory medication to relieve her pain.[14]

Dr. DuShuttle examined Claimant in September of 2019.[15] During this appointment, Claimant complained of pain in both her back and knee and reported pain and discomfort when standing all day at work.[16] However, following another examination in February of 2020, Dr. DuShuttle believed that Claimant's condition had "stabilized," and that she had reached "maximum medical improvement of her neck and back."[17]

B. **Claimant's Petitions to Determine Additional Compensation Due**

On June 18, 2020, Claimant filed two Petitions to Determine Additional Compensation Due.[18] Claimant sought a rating of nine percent permanent impairment to her right lower extremity and five percent permanent impairment to

---

[12] Id.

[13] Record, "Claimant's Exhibit #1," at 11:18-12:5. Dr. DuShuttle testified that the MRI revealed mild joint space narrowing on the medial side of Claimant's knee, preservation of the lateral aspect, a small bone spur along the kneecap, a small effusion in the knee, and a small osteophyte. However, Dr. DuShuttle admitted that the "age of the pathology is indeterminate on the MRI examination." Thus, some of the injuries identified through the MRI were "chronic in nature." Id.

[14] Id. at 12:9-11.

[15] Id. at 13:2-3.

[16] Id. at 13:5-9.

[17] Id. at 14:1, 14:14-15.

[18] Record, "Decision on Petitions to Determine Additional Compensation Due," at 2.

her lumbar spine.[19] In response, Perdue argued that Claimant had suffered no permanent impairment as a result of the work-place accidents.[20] On November 30, 2020, the Board held a Hearing (the "Hearing") via videoconference to consider Claimant's petitions.[21]

## C. The Board's Hearing

Dr. DuShuttle and Dr. Evan Crain ("Dr. Crain") provided the relevant medical testimony at the Hearing.[22] Both doctors testified by deposition.[23] Both doctors previously examined Claimant and rendered an opinion as to the appropriate permanent impairment rating.[24]

### 1. Dr. DuShuttle's Testimony

Dr. DuShuttle, who testified on behalf of the Claimant, opined that Claimant had suffered permanent impairment as a result of the injuries she sustained in the two work-place accidents.[25] Dr. DuShuttle relied on the Fifth Edition of the American Medical Association Guides to the Evaluation of Permanent Impairment

---

[19] Id.

[20] Id.

[21] Id.

[22] Id. at 2, 8.

[23] Id.; see also Record, "Joint Exhibit #1," at ¶¶ 5-6.

[24] Record, "Decision on Petitions to Determine Additional Compensation Due," at 4-6.

[25] Record, "Claimant's Exhibit #1," at 16:18-24.

(the "Guides") to conclude that Claimant has (1) a five percent permanent impairment to her lumbar spine, utilizing DRE Category-II for the rating; and (2) a nine percent permanent impairment to her right lower extremity.[26] Dr. DuShuttle apportioned the nine percent permanent impairment to the right lower extremity as three percent impairment for the mild patella subluxation; three percent due to arthritis;[27] and three percent for ongoing "intermittent" and "variable" pain.[28] Dr. DuShuttle based Claimant's low back impairment rating on Claimant's reported periodic tightness, guarding, and splinting.[29] Dr. DuShuttle concluded that both areas of impairment were related to both of Claimant's work-place accidents at Perdue.[30]

### 2. Dr. Crain's Testimony

Dr. Crain, who testified on behalf of Perdue, examined Claimant on four separate occasions between 2017 and 2019.[31] During the first two visits, Claimant reported pain and discomfort in her right knee.[32] During the third appointment, which occurred after Claimant's second work-place accident, Claimant reported

---

[26] Id.

[27] Record, "Claimant's Petition to Determine Additional Compensation," at 3.

[28] Record, "Decision on Petitions to Determine Additional Compensation Due," at 5.

[29] Id.

[30] Id. at 4.

[31] Id. at 8.

[32] Id. at 9.

6

feeling an "achy sensation" when she stood for long periods of time, but did not describe feeling any back pain.[33] During this appointment, Dr. Crain noted that Claimant had "irritability with pressure" around her knee and "mild quad weakness."[34] However, her range of motion was not restricted.[35]

In September of 2020, Dr. Crain examined Claimant for a fourth and final time to address her claim of permanent impairment.[36] Claimant reported improvement and stated, "Thank God I have no problems now."[37] When asked about the pain in her right knee, Claimant stated that her knee was sore from time to time.[38] When Dr. Crain asked specifically about her neck and back, Claimant stated that her neck was sore from time to time, and she wore a supportive belt for her low back when at work.[39] Dr. Crain concluded that, at the time of the exam, Claimant had "no discomfort in any body part,"[40] and her "physical exam was normal."[41]

---

[33] Record, "Employer's Exhibit #1," at 16:21-24.

[34] Id. at 16:14-16.

[35] Id. at 16:17.

[36] Id. at 17:4-8.

[37] Id. at 17:17.

[38] Id. at 18:1-2.

[39] Id. at 18:10-15.

[40] Id. at 18:20.

[41] Id. at 18:24-19:1.

Based on his examinations and review of Claimant's medical records, Dr. Crain determined that Claimant had no accident-related permanent impairment to either her lumbar spine or right lower extremity.[42] Rather, Dr. Crain opined that all of Claimant's injuries from the work-place accidents had resolved.[43] Dr. Crain also explained that he disagreed with Dr. DuShuttle's permanent impairment ratings and methodology.[44]

### 3. **Claimant's Testimony**

Claimant also testified during the Hearing.[45] She stated that she feels "constant pain" in her right knee and in her back.[46] She also stated that she can no longer sit for long periods of time because it "hurts way too much."[47] Further, she stated that she wears a supportive girdle while at work,[48] and takes "a lot of Tylenol" to alleviate her pain.[49] Claimant admitted that, despite her discomfort, she returned to work full-time at Perdue.[50] However, she explained that she returned to work because she

---

[42] Id. at 19:23-24, 20:1-3.

[43] Id. at 19:6-9.

[44] Id. at 22:17-19; see also Record, "Decision on Petitions to Determine Additional Compensation Due," at 12.

[45] Record, "Hearing Transcript," at 15:20.

[46] Id. at 18:8.

[47] Id. at 19:7-8.

[48] Id. at 19:10-12.

[49] Id. at 23:14-18.

[50] Id. at 22:16-17.

needed money to pay her bills and support her daughter.[51] When asked whether she told Dr. Crain that she had "no problems," Claimant testified that she did not remember making that statement to Dr. Crain.[52] Rather, Claimant insisted that she has always had pain in her knee and back since the accidents.[53]

Claimant, a Spanish speaker, required an interpreter during all four of her examinations with Dr. Crain.[54] During the first three examinations, Claimant's daughter or friend acted as her interpreter.[55] At the request of Claimant's counsel, Perdue hired a professional interpreter for Dr. Crain's final examination in September of 2020.[56] During his deposition, Dr. Crain testified that, although he is not fluent in Spanish, he felt that he was able to communicate effectively with Claimant during his examinations.[57] However, in closing argument, Claimant's counsel suggested that an error in interpretation, rather than relief of her symptoms, caused the stark difference in Claimant's reported symptoms from the first three appointments with Dr. Crain to the last.[58]

---

[51] Id. at 22:17-19.

[52] Id. at 19:15.

[53] Id. at 19:15-17.

[54] Record, "Employer's Exhibit #1," at 8:10-18.

[55] Id.

[56] Id. at 30:7-16, 32:16-22.

[57] Id. at 8:14-18.

[58] Record, "Hearing Transcript," at 38:4.

## D. The Board's Decision

After hearing testimony and reviewing documentary evidence, the Board rendered a decision finding that Claimant had no permanent impairment to either her right knee or her low back.[59] In its opinion, the Board accepted the medical conclusions of Dr. Crain over those of Dr. DuShuttle, finding that "Dr. DuShuttle's permanent impairment rating of Claimant's right lower extremity was incorrect and duplicative."[60] With regard to Claimant's back injury, the Board concluded that Claimant had reached "maximum medical improvement in the lumbar spine by the time of the second examination, on January 16, 2019."[61] The Board highlighted that even Dr. DuShuttle opined that "Claimant's lumbar spine sprain was essentially resolved by May 17, 2017."[62] By the time Dr. Crain examined Claimant in September of 2020, she was not taking any prescription medication to treat her pain and her physical examination was normal.[63] Thus, the Board agreed with Dr. Crain's opinion that "Claimant's injuries from the [work-place] accidents were resolved by September 9, 2020."[64]

---

[59] Record, "Decision on Petitions to Determine Additional Compensation Due," at 15.

[60] Id. at 13, 15.

[61] Id. at 14.

[62] Id.

[63] Id. at 15.

[64] Id.

The Board also noted the inconsistencies between Claimant's statements to her doctors and her testimony before the Board.[65] Specifically, during Dr. Crain's examination of Claimant in September of 2020, she reported that she was "all better and was not getting any treatment."[66] However, when testifying before the Board, Claimant reported that she experienced constant pain in her right knee and back that prevented her from sitting and engaging in other activities such as walking, biking, and going up and down stairs.[67] Further, although Claimant reported to both Dr. DuShuttle and Dr. Crain that she took Tylenol occasionally, she testified before the Board that she still takes "a lot of Tylenol" to alleviate her pain.[68] Based on these discrepancies, the Board concluded that Claimant's testimony was not credible.[69]

The Board was further persuaded by Claimant's ability to return to work full-time, on her feet all day as an assembly line worker at Perdue.[70] The Board found that, based on Claimant's February 2020 examination with Dr. DuShuttle, "any restrictions [in her ability to work] were based on subjective symptoms, [rather than] on anything she reported being unable to do."[71] After reaching these factual

---

[65] Id. at 14.

[66] Id.

[67] Record, "Hearing Transcript," at 18:7-8, 19:7-8, 21:4-6.

[68] Record, "Decision on Petitions to Determine Additional Compensation Due," at 14.

[69] Id.

[70] Id. at 15.

[71] Id. at 14.

determinations, the Board concluded that, from a "functional standpoint, physical examination standpoint, medical treatment review standpoint, and based on the Guides, Claimant has no permanent impairment[.]"[72] This appeal followed.

### III. Standard of Review

When hearing a decision of the IAB on appeal, the reviewing court must "determine whether the IAB's decision is supported by substantial evidence and is free from legal error."[73] Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[74] However, in making this determination, the Superior Court does not "sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[75] The Court may not "substitute its judgment for that of the Board below, unless the finding by the Board is manifestly against the weight of and has *no* foundation in the evidence."[76] Thus, the reviewing Court will not reverse the IAB's decision "when there is *some* evidence to support the Board's findings of fact and where there has been no error of law."[77] In reviewing a Board's

---

[72] Id. at 15.

[73] Glanden v. Land Prep, Inc., 918 A.2d 1089, 1100 (Del. 2007) (internal citations omitted).

[74] Oceanport Indus., Inc. v. Wilmington Stevedores, Inc., 636 A.2d 892, 899 (Del. 1994) (citing Onley v. Cooch, 425 A.2d 610, 614 (Del. 1981)).

[75] Johnson v. Chrysler Corp., 213 A.2d 64, 66 (Del. 1965).

[76] General Motors Corp. v. Freeman, 157 A.2d 889, 894 (Del. Super. 1960) (emphasis added).

[77] Dallachiesa v. General Motors Corp., 140 A.2d 137, 138 (Del. Super. 1958) (emphasis added).

decision, the Court must view the record "in the light most favorable to the prevailing party."[78]

## IV. Discussion

On appeal, Claimant does not assert that the Board committed legal error. Rather, Claimant contends that the Board's conclusion that Claimant is not permanently impaired was not supported by substantial evidence. In doing so, Claimant raises the following arguments: (1) the Board mischaracterized Dr. Crain's previous medical examinations and misconstrued Dr. DuShuttle's testimony; (2) the mischaracterization of the medical evidence led the Board to conclude incorrectly that Claimant lacked credibility; (3) the Board misconstrued Claimant's work capabilities; and (4) the Board ignored the possibility of a interpretation error during Dr. Crain's final examination of Claimant. Each argument will be evaluated in detail below.

### A. The Board's Analysis of the Medical Testimony

Claimant contends that the Board mischaracterized and misconstrued the medical evidence.[79] At the Hearing, the Board was presented with competing medical opinions. Each doctor thoroughly addressed Claimant's injuries and symptomology. However, they reached differing conclusions with regard to the

---

[78] Lopez v. Parkview Nursing Home, 2011 WL 900674, at *3 (Del. Super. Mar. 15, 2011).

[79] Appellant's Opening Br. 8-11.

permanency of Claimant's impairment. After reviewing the testimonies of both doctors, the Board explicitly chose to accept the medical opinion of Dr. Crain over the medical testimony of Dr. DuShuttle.[80]

The Board's ability to accept one doctor's medical opinion over another's finds substantial support in Delaware law.[81] There is no dispute that the Board's decision to accept the medical opinion of Dr. Crain over the medical opinion of Dr. DuShuttle does not constitute an error of law. Further, the Board's reliance on Dr. Crain's opinion is supported by substantial evidence in the record.[82] Accordingly, the Board's characterization of the medical evidence will not be disturbed by this Court on appeal.

## B. The Board's Determination on Claimant's Credibility

Claimant further argues that the Board's alleged mischaracterization of the medical evidence led to an erroneous conclusion that Claimant lacked credibility.[83] The Board noted in its decision that the symptoms Claimant described to Dr. Crain

---

[80] Record, "Decision on Petitions to Determine Additional Compensation," at 13-14.

[81] Munyan v. Daimler Chrysler Corp., 909 A.2d 133, 136 (Del. 2006) ("If the medical evidence is in conflict, the Board is the finder of fact and must resolve the conflict."); Playtex Prods., Inc. v. Harris, 2004 WL 1965985, at *2 (Del. Super. Aug. 31, 2004) ("Where there is conflicting medical testimony, it is well established under Delaware law that the IAB may rely on the opinion of either expert and such evidence constitutes substantial evidence for the purpose of the IAB's decision."); State v. Steen, 1999 WL 743326, at *3 (Del. Super. July 29, 1999) ("It is well-established that[,] when qualified experts give conflicting medical testimony in a workers' compensation case, the Industrial Accident Board is free to rely on the opinion of either expert, and such evidence constitutes substantial evidence for purposes of the Board's decision.").

[82] See Munyan, 909 A.2d at 136.

[83] Appellant's Opening Br. 8.

14

in September of 2020 were not the symptoms she testified about during the Board's Hearing.[84] These contradictions and inconsistencies led the Board to conclude that Claimant's testimony was not credible.[85]

"As a general rule, [t]he credibility of witnesses, the weight of their testimony, and the reasonable inferences to be drawn therefrom are for the Board to determine."[86] Because it acts as the finder of fact, the Board is in the best position to evaluate the credibility of the witnesses who testify before it.[87] Thus, "[c]redibility determinations made by the Board will not be disturbed on appeal unless the Court determines that the hearing officer abused his [or her] discretion."[88]

Here, the Board did not abuse its discretion in determining that Claimant was not credible. As the finder of fact, the Board was in the best position to evaluate the credibility of the witnesses who testified at the Hearing. Given the inconsistencies between the symptoms she reported to Dr. Crain and the symptoms she testified about during the Hearing, the Board's determination regarding Claimant's credibility was supported by substantial evidence.

---

[84] Record, "Decision on Petitions to Determine Additional Compensation Due," at 14.

[85] Id.

[86] Clements v. Diamond State Port Corp., 831 A.2d 870, 878 (Del. 2003) (alteration in original)(internal quotation marks omitted).

[87] Miller v. Layton Home, 2009 WL 1231064, at *4 (Del. Super. Apr. 29, 2009).

[88] Id.

15

## C. The Board's Characterization of Claimant's Ability to Work

Claimant's Appeal next contends that the Board misconstrued Claimant's work capabilities.[89] Claimant argues that her decision to return to work full-time was not based on relief of her symptoms, but instead was motivated by her need to pay her bills and support her sick daughter.[90] Thus, Claimant argues that there is no correlation between Claimant's symptoms and her work status.[91]

The Board's opinion emphasized that Claimant had returned to work full-time and full-duty by the time she was examined by Dr. Crain in September of 2020.[92] Claimant's job at Perdue required her to work eight-hour shifts while standing at an assembly line.[93] Based on these facts, the Board concluded that "from a functional standpoint . . . Claimant has no permanent impairment."[94]

This Court concludes that there was substantial evidence to support the Board's finding that, from a functional standpoint, Claimant was not permanently impaired. During the Hearing, there was conflicting testimony as to whether Claimant still experienced knee and back pain. However, both parties agreed that

---

[89] Appellant's Opening Br. 11.

[90] Id. at 12.

[91] Id. at 11.

[92] Record, "Decision on Petitions to Determine Additional Compensation Due," at 14-15.

[93] See id. at 15.

[94] Id.

16

Claimant was able to return to work full-time and full-duty following her work-place accidents. Thus, even if there is no "correlation" between Claimant's symptoms and her capacity for work, the Record indicates that Claimant's accidents did not impair her ability to return to work and complete her assigned duties. Thus, there is substantial evidence in the record to support the Board's conclusions about Claimant's functional capabilities.

**D. <u>The Board's Consideration of a Potential Interpretation Error</u>**

Finally, Claimant contends that the Board did not consider the "very plausible explanation" that an error in interpretation caused the discrepancies between Claimant's reported symptoms to Dr. Crain in September of 2020 and Claimant's testimony before the Board.[95] To support this argument, Claimant emphasized that, during the first three examinations with Dr. Crain, Claimant's daughter or friend acted as an interpreter. However, Perdue hired a professional interpreter for Claimant's final examination with Dr. Crain. Claimant highlights that it was only during this final appointment with Dr. Crain and the professional interpreter when Claimant allegedly reported resolution of her symptoms. Thus, Claimant suggests that the Board overlooked the possibility that this dramatic change in Claimant's reported symptoms was likely attributable to an error in interpretation, rather than

---

[95] Appellant's Opening Br. 13.

the actual resolution of Claimant's pain. This potential interpretation error, Claimant contends, caused the inconsistencies between Claimant's reported symptoms in September of 2020 and her testimony before the Board.

Perdue disputes that there was any error in interpretation. Instead, it contends that, in reaching its impairment determination, the Board focused on a "multitude of [medical] evaluations" rather than solely relying on Claimant's final examination with Dr. Crain. Thus, the Board's determination that Claimant was not permanently impaired was based on the "larger medical picture," and would not have been influenced by any alleged error in interpretation.

During the Hearing, the only argument addressing a possible interpretation error came from Claimant's counsel in closing argument.[96] There, it was argued that the inconsistencies in Claimant's reported symptoms and Claimant's testimony were caused by a "translation issue."[97] However, neither Claimant nor Dr. Crain testified that they believed there had been a communication barrier during any of the examinations. Rather, Dr. Crain stated in his deposition that, although he is not fluent, he "speak[s] Spanish every day,"[98] and never felt that he had "difficulty getting answers to any questions that [he] posed to [Claimant]."[99] Further,

---

[96] Record, "Hearing Transcript," at 38:4.

[97] Id.

[98] Record, "Employer's Exhibit #1," at 30:20.

[99] Id. at 30:22-24.

18

when asked whether she remembered telling Dr. Crain that she had no problems during the September 2020 examination, Claimant did not deny making the statement. Instead, she stated that she did not *remember* telling Dr. Crain that she had no problems.[100]

In rendering its decision, the Board considered the deposition of Dr. Crain and the Hearing testimony of Claimant. Therefore, the Board was given the opportunity to weigh Dr. Crain's statement that he did not believe there had been a communication barrier during his examinations of Claimant against Claimant's testimony that she did not remember telling Dr. Crain that her problems had subsided. Further, in closing arguments at the Hearing, Claimant's counsel suggested that the discrepancies in Claimant's reported symptoms were caused by an interpretation error. Despite this argument, the Board explicitly chose to accept Dr. Crain's opinion. Thus, Claimant's argument that the Board did not consider the possibility of an interpretation error is without merit.

The Board's opinion indicates that it found no interpretation error during Claimant's September 2020 appointment with Dr. Crain. Rather, the Board's opinion suggests that the inconsistencies in Claimant's reported symptoms were attributable to a lack of credibility in Claimant's Hearing testimony. The Record contains substantial evidence to support this conclusion. Because the appellate court

---

[100] Record, "Hearing Transcript," at 19:15.

may not substitute its own factual findings for that of the Board, this Court will not analyze whether there was, in fact, an interpretation error during the September 2020 examination by Dr. Crain. Rather, this Court will defer to the factual findings of the Board. The Board considered the potential interpretation error, factored it into its determination of credibility, and ultimately afforded it no weight.

## V.    Conclusion

The crux of Claimant's argument on appeal asserts that the Board misconstrued and mischaracterized evidence presented at the Hearing. In making this argument, Claimant requests that this Court review the evidence, weigh each witness's credibility, and reach its own conclusions about whether or not Claimant suffered permanent impairment as a result of the work-place accidents. This substitution of judgment is not the role of the reviewing Court. Rather, the role of this Court is to conclude whether (1) there was substantial evidence to support the Board's decision; and (2) the Board committed legal error. After reviewing the Record, this Court concludes that there was substantial evidence to support the Board's decision and the Board did not commit legal error. Accordingly, the decision of the Board is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge