# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEBORAH CANTONI, | ) |
| | ) Case No.: N22A-06-002 FJJ |
| **Claimant-Below,** | ) |
| **Appellant** | ) CITATION ON APPEAL |
| **v.** | ) FROM THE DECISION OF |
| | ) THE INDUSTRIAL |
| **DELAWARE PARK RACETRACK,** | ) ACCIDENT BOARD OF THE |
| **& SLOTS,** | ) STATE OF DELAWARE, |
| **Employer-Below** | ) NEW CASTLE COUNTY, |
| **Appellee,** | ) HEARING NO.:1213719 |

Submitted:  March 14, 2023
Decided:  March 16, 2023

## OPINION AND ORDER

*Upon Consideration of an Appeal from the Industrial Accident Board:*

### REVERSED.

Michael Ippoliti, Esquire, of the Ippoliti Law Group, 1225 North King Street, Suite 900, Wilmington, DE, *Attorney for Appellant.*

John W. Morgan, Esquire, of Heckler & Fabrizzio, 800 Delaware Avenue, Suite 200, Wilmington, DE, *Attorney for Appellee.*

**JONES, J.**

## INTRODUCTION

Appellant Deborah Cantoni appeals an order of the Industrial Accident Board (the "Board" or "IAB") requiring her to reduce her current narcotic dependence from a level of 75 milligram equivalents per day to zero. Prior to the decision, Delaware Park Racetrack & Slots ("Delaware Park") provided Ms. Cantoni, a former employee, with expenses for morphine treatment related to a slip and fall in 2001.

Delaware Park petitioned to terminate Ms. Cantoni's disability benefits in late 2021. The Board denied the petition in a decision dated May 13, 2022, but ordered Ms. Cantoni to wean off narcotics medication by the end of the calendar year. Ms. Cantoni appeals from this ruling.

The Court finds the Board erred in mandating that Ms. Cantoni reduce her morphine intake from 75 milligram equivalents per day to zero within six months. Therefore, the IAB's decision must be **REVERSED**.

## FACTUAL AND PROCEDURAL OVERVIEW

In December 2001, Ms. Cantoni suffered a compensable injury when she slipped and fell while working at Delaware Park.[1] She sustained injuries to her head, neck, and back.[2] Delaware Park's workers' compensation insurance carrier

---

[1] *See Cantoni v. Delaware Park*, No. 1213719 at 2 (Del. IAB May 13, 2022) (Decision on Petition in Terminate Benefits) (hereinafter "IAB Decision").

[2] Ms. Cantoni was diagnosed with a ruptured disk shortly after her slip and fall. *See* Hr'g Tr. (hereinafter "Tr.") 51:25-53:4, Mar. 8, 2022.

accepted her injury as a compensable claim that year,[3] and Ms. Cantoni underwent surgery for her back injury in 2002.[4]

Ms. Cantoni received her disability benefits without interruption for eighteen years.[5] In May 2020, however, Delaware Park filed a Petition to Terminate Benefits with the IAB.[6] The petition disputed Ms. Cantoni's need for continued medical treatment.[7]

The Board partially granted the petition in January 2021, finding Ms. Canton's injection and ablation treatments were no longer compensable.[8] But the Board stopped short of halting her treatment altogether; instead, it ordered Delaware Park to continue compensating Ms. Cantoni for her morphine medication, albeit at a lesser amount.[9] Specifically, the Board directed Ms. Cantoni to reduce her morphine intake from 300 milligram equivalents to 90 milligram equivalents over the following ten months.[10]

After the Board's January 2021 decision, Delaware Park ordered a medical examination of Ms. Cantoni in August 2021, which revealed she was still taking 300 milligram equivalents of morphine.[11] Consequently, Delaware Park filed a

---

[3] *See Tr.* 50:14-51:7.
[4] *See Id.* 51:25, 53:4.
[5] *See* IAB Decision at 2.
[6] *See id.*
[7] *See id.*
[8] *See id.* at 14.
[9] *See id.*
[10] *See id.* The reduction in morphine intake was to take place between January 2021 and October 2021.
[11] *See* Renewed Petition to Terminate Benefits, attached as Ex. E to Appellant's Op. Br.

renewed Petition for Termination of Benefits in October 2021.[12]  Through the renewed petition, Delaware Park, again, complained of Ms. Cantoni's noncompliance with the order to reduce her morphine intake to 90 milligram equivalents and, again, challenged the reasonableness and necessity of the treatment.[13]  The petition did not request the Board to reduce Ms. Cantoni's morphine intake to zero.[14]  It did, however, encourage the IAB to compel Ms. Cantoni's compliance with the "[narcotic] weaning process ordered in the [January 2021] Board decision."[15]

Thereafter, counsel for Delaware Park wrote to Ms. Cantoni's attorney in an attempt to resolve the matters addressed in the October 2021 petition.[16]  In the letter, Delaware Park offered to "voluntarily pay for [morphine] up to the level of 90 milligram equivalents per day."[17]  As with the petition, the letter made no mention of entirely eliminating Ms. Cantoni's morphine intake.[18]

With the parties unable to come to a resolution, the Board arranged to hear the renewed petition in March 2022.  In anticipation of the March hearing, Ms. Cantoni took the deposition of Dr. John Townsend, Delaware Park's medical expert, early that month. At the deposition, Dr. Townsend testified as follows:

---

[12] *See id.*
[13] *See id.*
[14] *See generally id.*
[15] *See id.*
[16] *See* Letter from Delaware Park Counsel, attached as Exhibit G to Appellant's Op. Br.
[17] *Id.*
[18] *See generally id.*

[EMPLOYER COUNSEL]: Alright. Where do we go from here, in your opinion?

[DR. TOWNSEND]: Well, again, it's really dependent on whether [Ms. Cantoni] is able to tolerate weaning further. Certainly, if she wanted to be weaned more, that would be reasonable. And the other criteria would be, if she doesn't really have pain reduction that's substantial, or an increase in pain that's substantial when they taper her, they could make a decision to taper her further.

[EMPLOYER COUNSEL]: Is it reasonable to try to taper her down to zero?

[DR. TOWNSEND]: Yeah, I mean, it's always reasonable to try. I mean, the goal for people who have been on chronic narcotics is to try and taper them off of those. Not always – we're not always successful in doing that, so it's good to have a target to shoot for, and it appears that she is in the target range that's been discussed previously.

[EMPLOYER COUNSEL]: Do you feel it's appropriate to continue with the weaning process from this point forward?

[DR. TOWNSEND]: Yes. Again, as long as the patient's tolerating it and she's, you know, not having withdrawal or increases in her baseline pain levels, then it's reasonable to continue with a weaning program.

[EMPLOYER COUNSEL]: Alright. And your answers today have been held to the standard of a reasonable medical probability?

[DR. TOWNSEND]: Yes.[19]

\*     \*     \*

[CLAIMANT COUNSEL]: Doctor, you said if the patient doesn't experience a significant uptick in terms of her pain levels, it would be not unreasonable to continue to wean her from the current level of 75 milligram equivalent – morphine equivalence per day, correct?

[DR. TOWNSEND]: Yes.

[CLAIMANT COUNSEL]: Doctor, if she does, however, have an increase in her pain level, would it be reasonable for her to continue at the present 75 milligrams - - morphine equivalent milligram - -  if I'm getting that right - - morphine equivalent - -

[DR. TOWNSEND]: Yes.

[CLAIMANT COUNSEL]: - - per day, which is her present dosage?

[DR. TOWNSEND]:  Yes.  I think, again, some people will tolerate going further; other people, you know, are intolerant.  So, you know, depending on her response to the tapering - - and again, they suggested they were going to restart after it gets warmer out - - then, you know, it may be that 75 morphine [equivalents] is where she is best served at this point.

[CLAIMANT COUNSEL]: In that respect, would you defer, Doctor, to the treating physician in terms of whether it's

---

[19] Deposition of John Townsend, M.D., Mar. 3, 2022 (hereinafter "Townsend Dep.") at 21:5-24; 22 1-14.

appropriate to continue the present dosage, depending upon her response to the weaning process?

[DR. TOWNSEND]: Yes, I mean, again, *he's the one who's seeing her*, you know, and if she is tolerating [the weaning], then it's reasonable to continue. *If she's not tolerating [the weaning], then I assume that he won't continue, and that would be reasonable.*[20]

Dr. Townsend's was the sole medical testimony presented at the Board hearing in March 2022. The Board ultimately found in favor of Delaware Park and ordered Ms. Cantoni to "wean off her current [morphine dose] of 75 milligrams per day to zero within six months" of the decision.[21]

## STANDARD OF REVIEW

When an employee suffers compensable injury, Delaware law requires the employer to pay for reasonable and necessary medical "services, medicine, and supplies" causally connected with the injury.[22] The employee seeking compensation bears the burden of proving, by a preponderance of the evidence, that a work-related accident caused the injury.[23] Where compensation has been established and the employer seeks to terminate the benefits, the burden of proof on the petition to terminate rests with the employer.[24]

---

[20] *Id.* at 23:20-24; 24:1-24; 25 1-8 (emphasis added).
[21] *See* IAB Decision at 11-12.
[22] 19 *Del. C.* §2322.
[23] *See Coicuria v. Kauffman's Furniture,* 1997 WL 817889 at *2 (Del. Super., Oct. 30, 1997), *aff'd*, 706 A.2d 26 (Del. 1998).
[24] *C.F. Brown & Co. v. Mason*, 168 A.2d 105 (Del. 1961).

7

On appeal from the IAB, the Superior Court limits its review to determining whether the IAB's decision was free from legal error and supported by substantial evidence.[25] "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.' It is a low standard to affirm and a high standard to overturn."[26] Thus, the Court must search the entire record to determine whether, based on all the testimony and exhibits, the Board could fairly and reasonably reach its conclusions.[27] The Court, however, "does not sit as trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions."[28] It is solely within the purview of the Board to judge credibility and resolve conflicts in testimony.[29] Where substantial evidence supports the administrative decision, the Court must affirm the ruling unless it identifies an abuse of discretion or clear error of law.[30] Questions of law are reviewed *de novo.*[31]

## ANALYSIS

Ms. Cantoni submits the Board committed reversable error in three respects by: (1) issuing an order in contrast with Delaware Park's expert and applicable law; (2) ordering her to wean off narcotic medications without

---

[25] *See Glanden v. Land Prep., Inc.,* 918 A.3d 1098, 100 (Del. 2007). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Oceanport Indus. v. Wilmington Stevedores,* 636 A.3d 892, 899 (Del. 1994).
[26] *Hanson v. Delaware State Public Integrity Comm'n.,* 2012 WL 3860732 R *7. (Del. Super. Aug. 30, 2012).
[27] *See Nat'l Cash Register v. Riner,* 424 A.3d 669, 674-75 (Del. 1980).
[28] *Johnson v. Chrysler Corp.,* 214 A.2d 64, 67 (Del. 1965).
[29] *See id.*
[30] *See Munyan v. Daimler Chrysler Corp.,* 909 A.2d 133, 136 (Del. 2006).
[31] *See id.*

providing notice, in violation of her due process rights; and (3) *sua sponte* granting Delaware Park relief it did not seek in its petition.

It is well established that the IAB cannot ignore unrebutted medical evidence and "substitute its judgment" for that of a medical expert.[32] If the record indicates the Board made its decision on such grounds, then reversal upon judicial review is necessitated.[33]

Against this background, the Court's analysis will start and end with Dr. Townsend's testimony. As discussed above, Dr. Townsend was the sole provider of medical testimony at the hearing and, to review, testified that: (1) Ms. Cantoni was in compliance with the treatment plan ordered in January 2021;[34] (2) it would be reasonable for her to continue taking 75 milligrams equivalents if weaning beyond that dosage increased her discomfort;[35] and (3) further weaning Ms. Cantoni off narcotics would be appropriate *only if her treating physician deemed it so.*[36]

Read generously, Dr. Townsend's testimony suggested Ms. Cantoni should begin the weaning process. But, to the extent he opined on the issue at all, Dr. Townsend clearly stated the decision of whether to *entirely* wean off narcotics

---

[32] *See Pusey v. Natkin & Co.,* 428 A.2d 1155, 1157 (Del. 1981); *see also Clements v. Diamond State Port Corp.,* 831 A.2d 870, 878 (Del. 2003)("It is well established that the Board cannot substitute its judgment to nullity the objective findings of a medical expert that fully support he Claimant's subjective complaints.")

[33] *See Kreshtool v. Delmarva Power and Light Co.,* 310 A.2d 649, 652 (Del. Super. 1973).

[34] As noted *supra*, Dr. Townsend testified that Ms. Cantoni had actually reduced her morphine intake *beyond* what was required in the January 2021 order.

[35] Townsend Dep. 24:13-21.

[36] *Id.* 25:3-8.

should be left to the discretion of Ms. Cantoni's treating physician.[37]  At no point did he indicate she should halt usage by a date certain.

The Board, obviously, is not Ms. Cantoni's treating physician.  And the Board, obviously, is not in position to act as such.  Thus, the order requiring Ms. Cantoni to entirely wean off narcotics within six months is not only unsupported by substantial evidence; it is not supported *by any evidence at all.*

Because the Board clearly abused its discretion by issuing an order that has no record support, the Court need not, and will not, reach Ms. Cantoni's final two arguments.  The decision of the IAB is **REVERSED**.

    **IT IS SO ORDERED**.


                                                    /s/ *Francis J. Jones, Jr.*
                                                    Francis J. Jones, Jr., Judge



Via File & Serve Xpress

---

[37] *Id.*