KATHY RHINEHARDT-MEREDITH, Claimant Below, Appellant,
v.
STATE OF DELAWARE, Employer Below, Appellee.
No. 302, 2008
Supreme Court of Delaware.
Submitted: October 8, 2008
Decided: December 22, 2008
Before STEELE, Chief Justice, BERGER and RIDGELY, Justices.

ORDER
MYRON T. STEELE, Chief Justice.
This 22nd day of December 2008, it appears to the Court that:
(1) Kathy Rhinehardt-Meredith appeals from a Superior Court judgment affirming the decisions of the Industrial Accident Board that injuries RhinehardtM-eredith suffered as a result of a 2005 motor vehicle accident were not caused by injuries suffered in a 1980 industrial accident and, therefore, were not compensable. Rhinehardt-Meredith makes two arguments on appeal. First, she contends that the IAB and Superior Court erred as a matter of law by applying the wrong standard of causation. Specifically, she argues that rather than applying the "direct and natural result" test, the Board looked only to the proximity of the two injuries to determine whether one was "causally related" to the other. Second, she contends that the Board erred in relying on the State's medical expert, whose testimony, she contends, did not provide substantial evidence to support the Board's decision. Because we find no merit to either of her arguments, we affirm.
(2) On November 23, 1980, while working for the State of Delaware, Rhinehardt-Meredith injured her back. As a result, she had two fusion surgeries performed at the S4 to L1 vertebral level of the lower back. The first surgery occurred in the early 1980s and Dr. Kalamchi performed the second in 2002. Following the second surgery, Rhinehardt-Meredith missed two months of work but returned to work part time in January 2003. By October 10, 2003, she was working fulltime and had sufficiently returned to her normal activities for Dr. Kalamchi to release her from active care.
(3) In September 2005, Rhinehardt-Meredith was involved in a motor vehicle accident on Interstate 95 ("2005 accident"). Rhinehardt-Meredith was at a near standstill in traffic when a sports utility vehicle struck her vehicle, pushing the trunk of her vehicle into the back seat. Immediately following the accident, Rhinehardt-Meredith complained of neck pains and headaches and was treated with a neck brace and medication. The accident left her totally disabled for two or three days.
(4) About a month after the accident, Rhinehardt-Meredith started to develop lower back pains. She then visited Dr. Kalamchi on May 12, 2006 and underwent a third spinal fusion surgery on August 16, 2006. This surgery fused the L2-3 vertebrae, two levels above the site of the 1980 and 2002 surgeries. Rhinehardt-Meredith petitioned the IAB for additional compensation of $103,124.51 for costs associated with this third surgery.
(5) At the IAB hearing, Rhinehardt-Meredith presented the deposition testimony of Dr. Kalamchi, who testified that a 2002 MRI indicated a nonunion from L4 through S1 as well as narrowing and abnormal changes at the L2-3 level. At the time, Dr. Kalamchi questioned whether to treat the L2-3 level, ultimately electing not to operate because he did not want to place additional stress on the nonfused levels. He believed that, after three or four years, the L2-3 level eventually succumbed to the added stress caused by the L4 to S1 fusion. Dr. Kalamchi testified that he believes it is possible for the added stress of a fusion to affect mobile levels of the spine that are not adjacent to the fusion site, and claims to have seen this multiple times throughout his practice. Although he was unable to cite anything specific, he also believes there is medial literature to support this idea. Furthermore, although Dr. Kalamchi was unaware of the 2005 accident prior to the 2006 surgery, he does not believe that information would have changed his opinion that the injury precipitating the 2006 surgery was a result of the 1980 accident. He does not believe that the 2005 accident could have caused the damage to the L2-3 area because there was not enough time between it and the third surgery. Instead, he believes that the 2005 accident could have only made the existing problem more symptomatic.
(6) Dr. Sabbagh testified by deposition for the State. He conceded that the procedures performed by Dr. Kalamchi were reasonable and necessary, but testified that they were unrelated to Rhinehardt-Meredith's 1980 accident. He reviewed the 2002 MRI and testified that it showed minimal narrowing of the spinal canal at the L2-3 level secondary to a disc bulge. He opined that natural degeneration brought on by age caused her condition, not the 1980 accident. He also reviewed the 2006 MRI, which he believed indicated that the bulging disc progressed into a hernia. This could be attributed to multiple possible causes, including significant trauma, insignificant trauma, and natural aging.
(7) Dr. Sabbagh opined that neither the 1980 accident nor RhinehardtM-eredith's related treatment brought about the changes that weakened the L2-3 level. Dr. Sabbagh testified, instead, that the 2005 accident likely exacerbated a weakened back condition brought on by age, not the 1980 accident. He stated that the 2002 MRI showed age appropriate changes and no significant pathology to the L3-4 vertebral level. He believed that, if the L4 to S1 fusion contributed to a weakened state at L2-3, then L3-4 would also show damage. Dr. Sabbagh acknowledged that a fusion could bring about changes to adjacent vertebral levels, but not to more remote vertebral levels.
(8) The IAB credited Dr. Sabbagh's testimony over Dr. Kalamchi's and found that the injuries resulting from the two accidents were not causally related. The Board found that the 2005 accident exacerbated a condition brought on by Rhinehardt-Meredith's age and that the 2002 MRI showed age appropriate degeneration at L2-3 and no significant pathology at L3-4. It accepted Dr. Sabbagh's testimony that there would have been more pathology at L2-3 during the 2002 MRI, had the 1980 accident been the cause of the injuries leading to the 2006 surgery. The Board determined that Rhinehardt-Meredith did not meet her burden of proof because she failed to show that the 1980 accident and her condition in 2006 were causally related and denied additional compensation. Rhinehardt-Meredith then appealed to the Superior Court, which affirmed the Board's decision, finding it was supported by substantial evidence in the record. This appeal followed.
(9) In reviewing decisions from the Industrial Accident Board our role is limited. We review the record to determine whether the Board's decision is supported by substantial evidence and is free from legal error.[1] We review questions of law de novo.[2] We do not weigh the evidence, determine credibility or draw our own factual findings or conclusions; we merely determine if the evidence is legally adequate to support the Board's factual findings.[3]
(10) Rhinehardt-Meredith argues that the IAB erred as a matter of law by failing to apply the "direct and natural result" test. Hudson v. E.I. DuPont de Nemours & Co. first adopted the direct and natural result test.[4] That test dictates that when an employee suffers a compensable industrial injury and later suffers a non-industrial injury, the later injury is compensable by the employer if it "follows as a direct and natural result of the primary compensable injury."[5] The direct and natural result test also has a superseding causation component: i.e., if the later injury is a result of the claimant's own negligence or fault, the chain of causation is broken and the later injury is not compensable.[6]
(11) Rhinehardt-Meredith argues that the IAB only assessed the relation of the 2005 accident to the 1980 accident by reference to the proximity of the injuries sustained in both accidents. She argues that the Board misinterpreted the Superior Court's holdings in Barkley v. Johnson Controls[7] and Food Lion v. King[8] because it based its decision on the fact that the injuries stemming from the 2005 accident were at the L2-3 vertebral junction, while the injuries from the 1980 accident were sustained at the L4-S1 junction. Rhinehardt-Meredith asserts that the correct standard is "whether the added stress caused by a fusion can cause problems at another abnormal level and if that is a `direct and natural consequence' of the injury."
(12) The Board did not limit its use of the proximity of the two spinal injuries to assess the causal relationship; rather, the Board accepted this evidence to support its decision to accept Dr. Sabbagh's opinion over Dr. Kalamchi's. The IAB's determination that the changes to the L2-3 area would have been greater, had they been related to the initial fusion, flows from an implicit direct and natural result inquiry.[9] The Board determined that if the 2005 injury was causally related to the 1980 accident, then the damage to the L2-3 area would have been more noticeable in the 2002 MRI.[10] Implicit in Dr. Sabbagh's opinion that the preexisting damage was a result of natural aging, which the Board accepted, is the conclusion that the preexisting damage could not have been the direct and natural result of the 1980 industrial accident. Thus, the Board applied the proper test to determine causation.
(13) Rhinehardt-Meredith next argues that the Superior Court erred by applying a test that is ordinarily utilized in successive carrier liability cases, rather than the direct and natural result test.[11] The Superior Court, indeed, stated the law for successor carrier liability, which is different than the direct and natural result inquiry.
(14) The Superior Court, however, began its analysis by recognizing that the "direct and natural results" test was the applicable causation standard.[12] The court then affirmed the IAB's finding that there was no causal connection between the two accidents, without ever reaching the question of whether the 2005 accident was a "new or independent accident."
(15) Rhinehardt-Meredith was first required to prove that her recent injury was compensable because it was a natural and direct result of the 1980 accident. Only then would the Board or the Superior Court continue with the superseding causation analysis. The superseding causation analysis functions to remove liability from what would otherwise be compensable claims because of the claimant's negligent or intentional acts. The Superior Court correctly affirmed the Board's decision that there was no relationship between the 1980 and 2005 accidents; after reaching that conclusion, no superseding causation analysis needed to be done.
(16) Rhinehardt-Meredith also argues that the Board's and the Superior Court's findings are not based on substantial evidence and must be reversed. Specifically, she claims that Dr. Sabbagh's testimony did not establish that she failed to meet her burden and that Dr. Sabbagh's testimony that the treatment was reasonable indicates that the Board did not base its findings on substantial evidence. We conclude that the Board's findings are supported by substantial evidence.
(17) "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Substantial evidence has been quantified as "more than a scintilla but less than a preponderance of the evidence."[14] "This Court is not the trier of fact and does not have authority to weigh the evidence, determine the credibility of witnesses, or make independent factual findings. Determinations of credibility are reserved exclusively to the Board."[15] We give deference to the experience and specialized skill of the Board and will accept the Board's findings, even if, acting independently, we would have reached a contrary finding.[16] "Only when there is no satisfactory proof in support of a factual finding of the Board may the Superior Court, or this Court for that matter, overturn it."[17]
(18) Rhinehardt-Meredith challenges the decision by the Board to credit the testimony of Dr. Sabbagh over that of Dr. Kalamchi regarding the causal relation of the 1980 accident and the 2005 accident. It is within the Board's authority to accept the testimony of one expert over another as long as the testimony the Board finds more persuasive is supported by substantial evidence.[18] Dr. Sabbagh's testimony provided sufficient relevant evidence to support the Board's findings.
(19) In accepting Dr. Sabbagh's conclusions that Rhinehardt-Meredith recovered from her 1980 accident and the resulting surgeries and that her recent injuries were not causally related to the 1980 accident, the Board stated that it found his opinion "reasonable." It specifically found Dr. Sabbagh's opinion that the problem likely resulted from "chronic degenerative changes at L2-3 that were recently exacerbated by the motor vehicle accident" to be "a much more realistic scenario than to have the L2-3 problems as a result of her 1980 injury or 2002 surgery." This decision was based on the lack of progressive damage to the L2-3 vertebral junction in the 2002 MRI that would have been present had the injury been related to the 1980 injury. The Board noted that the medical literature also supported Dr. Sabbagh's opinion, while Dr. Kalamchi could not point to any specific support for his opinion, other than personal experience. Moreover, the Board found it "significant" that Dr. Kalamchi did not initially know about the 2005 accident.
(20) Rhinehardt-Meredith next challenges the Board's decision on the basis of the Superior Court's decision in McCracken v. Wilson Beverage Co.[19] In McCracken, the court held that, because the employer's expert did not refute the testimony of the claimant's expert concerning the reasonableness of medical treatment for which the claimant sought compensation under 19 Del. C. § 2322, there was not substantial evidence to find for the employer.[20] Because the employer's expert did not testify that the two injuries were unreasonable or that it was medically impossible to relate the two procedures, the Superior Court reversed the findings of the Board.[21]
(21) Based on Dr. Sabbagh's admission that her medical treatment was reasonable, Rhinehardt-Meredith argues that McCracken should control. This position misapprehends McCracken's holding. Both causation and reasonable medical treatment are elements of a worker's compensation claim, and, in McCracken, the reasonableness of the treatment was at issue.[22] No one here questions whether Rhinehardt-Meredith's third surgery was reasonable or medically necessary; rather, the Board based its decision on testimony indicating that the 2005 injuries were not causally related to the 1980 accident. Thus, McCracken is inapposite.[23]
(22) Lastly, Rhinehardt-Meredith challenges the Board's findings on the basis of the Superior Court's decision in Lindsay v. Chrysler Corp.[24] She argues that, because both experts testified by deposition, the Board was not able to base its decision solely on the persuasiveness of one expert over another. In Lindsay, the court held that when both experts testify by deposition, the IAB is not permitted to accept one opinion over the other solely on the persuasiveness of that witness.[25] Here, the Board provided specific relevant reasons for discounting the opinion of Dr. Kalamchi and accepting the opinion of Dr. Sabbagh, consistent with our caselaw.[26] Thus, we conclude that Rhinehardt-Meredith's claims of error are without merit.
NOW, THEREFORE, IT IS ORDERED that the decision of the Board is AFFIRMED.
NOTES
[1] E.g., Johnson v. Chrysler Corp., 213 A.2d 64, 66-67 (Del. 1965); GMC v. Freeman, 164 A.2d 686, 688 (Del. 1960); see also 29 Del. C. § 10142(d).
[2] Duvall v. Charles Connell Roofing, 564 A.2d 1132 (Del. 1989).
[3] Johnson, 213 A.2d at 66-67; see also 29 Del. C. § 10142(d).
[4] 245 A.2d 805 (Del. Super. 1968).
[5] Id. at 810 (citing 1 LARSON, WORKMEN'S COMPENSATION LAW, § 13.12).
[6] Barkley v. Johnson Controls, 2003 WL 187278, at *3 (Del. Super.).
[7] Id. at *4 (holding that a weakened condition stemming from a prior industrial accident that leads to a non-industrial accident is compensable only if the chain of causation is not broken by claimant's negligence or intentional misconduct).
[8] Delhaize Am., Inc. a/k/a Food Lion v. King, 2005 WL 1654367, at *3 (Del. Super.) (affirming a decision of the I.A.B. to discount the testimony of Claimant's expert because he applied a "but for" test to causality instead of the proper "direct and natural result" test).
[9] Although the IAB did not use the precise language "direct and natural result (or consequence)," that is not controlling. The Superior Court determined the IAB utilized the standard when it found causation, even though it did not use the words "direct" or "natural." In a similar case, the Superior Court found that the Board properly performed its causality test when it stated, "[The Board] accepts [Claimant's expert doctor's] opinion that while the fall could have made Hall's symptoms worse, the underlying cause of the L2/3 herniation and resultant surgery was the natural degeneration brought on by the previous fusions." Standard Dist., Inc. v. Hall, 2006 WL 2714960, at *2 (Del. Super. 2006) (quoting Hall v. Standard Dist., Inc., No. 908223, at 13 (Del. I.A.B. June 28, 2005)); cf. Neely v. State, 2007 WL 4201131, at *2, 4 (Del. Super. 2007) (holding the IAB did not determine causation properly and remanding to determine if claimant would still have been totally disabled in the absence of the subsequent injury).
[10] In fact, the IAB made a direct and natural determination when it credited the testimony of Dr. Sabbagh: "The Board accepts Dr. Sabbagh's opinion that the L2-3 disc bulge was a normal degenerative finding for someone of Claimant's age in 2002 and that the degenerative changes would have been much greater if they were related to the L4 to S1 fusion that had been performed initially in 1981."
[11] The Superior Court stated:

If an impairment has returned or increased "without the intervention of a new or independent accident," an employee may seek compensation. A two step test is applied to determine the distinction. First, the Board determines whether the second injury was a result of an "intervening or untoward event." Second, the Board determines whether there was a change in Claimant's condition as a result of the event. In this case, the Board found that the 2005 car accident caused an injury unrelated to the 1980 industrial injury and therefore correctly treated it as a new and unrelated injury. Appellant's argument that the Board applied the wrong rule is without merit.
Rhinehardt-Meredith, 2008 WL 2582981, at *3 (internal citations omitted).
[12] Id.
[13] Breeding v. Contractors-One-Inc., 549 A.2d 1102, 1104 (Del. 1988).
[14] Id.
[15] Wenke v. GAICO, 2006 WL 1476057, *2 (Del. 2006).
[16] See Papa John's, Inc. v. Biddle, 2006 WL 3844074 (Del. Super. 2006).
[17] Johnson v. Chrysler Corp., 213 A.2d 64, 51 (Del. 1965).
[18] Cottman v. Burris Fence Const., 2006 WL 3742580, *3 (Del. 2006).
[19] 1992 WL 301985 (Del. Super.).
[20] Section 2322(a) mandates that an employer pay for reasonable medical treatment relating from an industrial accident.
[21] McCracken, 1992 WL 301985 at *5.
[22] Id. at *3.
[23] The Superior Court was presented with a similar argument in Boucek v. J.C. Penny, Co, 1995 WL 108949 (Del. Super. 1995), where the claimant sought to reverse on the same grounds Rhinehardt-Meredith now argues. Like the instant case, the Board based its findings on the lack of a causal relationship between the two injuries. In declining to extend McCracken into such cases, the court stated:

The Claimant reads McCracken to extend this rule to disputes as to causation as well as to appropriate treatment and says that if a Claimant's treating physician testifies that the injuries were caused by an industrial accident, the Board may not reject that testimony unless the employer's doctor says that the treating physician's opinion is unreasonable or incredible.
To the extent that McCracken can be read to impose such a standard when evaluating the existence of substantial evidence, it would result in a departure from the law as it has been generally applied on appeals from the Industrial Accident Board.
Id. at *4.
[24] 1994 WL 750345 (Del. Super. 1994).
[25] Lindsay, 1994 WL 750345, at *3.
[26] See Diamond Fuel Oil v. O'Neal, 734 A.2d 1060, 1065 (Del. 1999) ("While the Board is entitled to discount the testimony of the medical witness on the basis of credibility, it must provide specific relevant reasons for doing so.")