# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **WALMART, INC.,** | ) | |
| Employer-Below, | ) | |
| Appellant, | ) | |
| | ) | |
| **v.** | ) | **C.A. No. N21A-07-003 PRW** |
| | ) | |
| **PAMELA GALLAGHER,** | ) | |
| Claimant-Below, | ) | |
| Appellee, | ) | |

Submitted: February 24, 2022
Decided: May 24, 2022

*Upon Walmart Inc.'s Appeal from the Industrial Accident Board,*
**AFFIRMED**.

## MEMORANDUM OPINION

Maria Paris Newell, Esquire, HECKLER AND FRABIZZIO, Wilmington, Delaware, *Attorney for Appellant Walmart, Inc.*

Gary S. Nitsche, Esquire, and Joel H. Fredericks, Esquire, WEIK NITSCHE & DOUGHERTY LLC, Wilmington, Delaware, *Attorneys for Appellee Pamela Gallagher*.

**WALLACE, J.**

Walmart, Inc. files this appeal from Industrial Accident Board's (the "Board" or "IAB") grant of Pamela Gallagher's Petition to Determine Additional Compensation Due. The Court finds the Board's decision is supported by substantial evidence and is free from legal error. Accordingly, the Board's decision is **AFFIRMED.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pamela Gallagher worked for Walmart for approximately five years.[1] Her job required her to unload trucks, bend down and lift boxes, and break down boxes.[2] During her shift on June 13, 2018, Ms. Gallagher "bent over at one point and . . . felt excruciating pain in [her] lower back."[3] She was immediately "stuck in a bent over position."[4] The pain concentrated in her low back and radiated into her right thigh.[5] Ms. Gallagher was taken by ambulance to the Saint Francis Hospital emergency room for evaluation and treatment.

In the ambulance, Ms. Gallagher told the EMT's that she thought she was

---

[1] Transcript of Apr. 23, 2021 IAB Hearing at 10 (marked as "Tab 2" in the IAB Record; hereinafter "Hr'g Tr."), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

[2] *Id.*

[3] *Id.* at 11.

[4] *Id.*

[5] *Id.* at 12.

suffering a flare up from a prior "sciatica" issue.[6] Ms. Gallagher's sciatica began after the birth of her son, more than thirty years before.[7] She described the sciatica symptoms as gradual, inconsistent pain that came and went, mainly affecting her buttocks area.[8] Before June 13, 2018, her sciatica would flare up and go away in a short period of time.[9] This condition did not impede her ability to work, and Ms. Gallagher did not recall receiving any specific medical treatment—other than one spinal injection—over the years for her sciatica.[10] According to Ms. Gallagher, the sciatica symptoms and the pain resulting from the June 13, 2018 incident weren't the same.[11]

After being discharged from Saint Francis, Walmart sent Ms. Gallagher to Concentra to treat the work injury and coordinate her continued care.[12] While at Concentra, Ms. Gallagher participated in physical therapy, completed a battery of

---

[6]  *Id.* at 12.

[7]  *Id.*

[8]  *Id.* at 12-13.

[9]  *Id.* at 16.

[10]  *Id.* at 13-14.  Other than one prior back injection, Ms. Gallagher did not receive any other therapeutic, medical, chiropractic or other treatment for sciatica.  *Id.* at 14.

[11]  *See id.* at 25-26, 32-33, 45-46, 48-50.

[12]  *Id.* at 14-15.  Concentra medical records reflect Ms. Gallagher reported a "prior history of sciatica with some involvement to the left thigh."  *Id.* at 15.

chiropractic treatments, and underwent an MRI.[13]  After receiving the MRI results, Concentra referred Ms. Gallagher to Dr. Selina Xing, M.D.  Dr. Xing recommended that Ms. Gallagher receive a back injection—a selective nerve root block.[14] Concurrently, Concentra referred Ms. Gallagher to a neurologist at Christiana Care to "confirm the need for . . . the [selective nerve root block] injections."[15] After completing an examination, the neurologist agreed with the reasonableness and necessity of the nerve root block injection.[16]  During the month of December 2018, Dr. Xing performed the selective nerve root block procedure.[17]

That provided Ms. Gallagher temporary relief but about five months later Ms. Gallagher's pain returned to its pre-procedure level.[18]  In June 2019, Dr. Xing repeated the selective nerve root procedure.[19]   Like the first injection, this second procedure provided Ms. Gallagher short-term relief.   But after six months, Ms. Gallagher's pain returned.[20]

---

[13]  *Id.* at 15.

[14]  *Id.* at 16.

[15]  *Id.* at 16-17.

[16]  *Id.* at 17.

[17]  *Id.*

[18]  *Id.*

[19]  *Id.* at 17-18.  All of Ms. Gallagher's workers' compensation claims were processed and paid by Walmart's workers' compensation carrier.  *Id.* at 18.

[20]  *Id.* at 18.

In early 2020, Ms. Gallagher's pain became worse than it had been prior to the selective nerve block injections.[21] She tried acupuncture but that didn't relieve her back pain.[22] Dr. Xing recommended, for a third time, that Ms. Gallagher repeat the selective nerve root block procedure.[23] Soon thereafter, she performed that procedure. Just as with the first two injections, Ms. Gallagher received only temporary relief.[24] Approximately six months after the third try, Ms. Gallagher's pain returned. So Dr. Xing referred Ms. Gallagher to Dr. Mark Eskander, a board-certified orthopedic spine surgeon.[25]

On October 1, 2020, Dr. Eskander recommended that Ms. Gallagher undergo spinal fusion surgery and classified Ms. Gallagher as totally disabled pending surgery.[26] Ms. Gallagher agreed to the surgery but it was postponed because Walmart's workers' compensation insurance carrier declined to pay for it.[27]

Up to this point in Ms. Gallagher's treatment, Walmart never contested that Ms. Gallagher suffered a work-related injury on June 13, 2018, or that any given

---

[21] *Id.* at 19.

[22] *Id.* at 20.

[23] *Id.* at 20-21.

[24] *Id.* at 21.

[25] *Id.* at 21. Ms. Gallagher's last day of work had been August 27, 2020. *Id.* at 28.

[26] *Id.* at 22.

[27] *Id.* at 22-23.

treatment or procedure wasn't both necessary and appropriate. Indeed, Walmart paid for all treatments related to the June 2018 work injury—until Dr. Eskander recommended spinal fusion surgery.

On October 29, 2020, Ms. Gallagher filed a Petition to Determine Additional Compensation Due to an Insured Employee. Ms. Gallagher claimed she was entitled to total disability benefits, payment of medical expenses, including the surgery recommended by Dr. Eskander, and attorney's fees.

The Industrial Accident Board conducted a hearing on Ms. Gallagher's petition. Prior to the hearing, the Parties submitted a stipulation of facts to the Board. Through that stipulation, the parties agreed that: (1) Ms. Gallagher had sustained a compensable injury to her low back as a result of a June 13, 2018 work-related accident while working for Walmart; (2) Ms. Gallagher had filed a Petition to Determine Additional Compensation Due "seeking payment of all medical expenses and periods of disability associated with the low back surgery proposed by Dr. Mark Eskander;" and, (3) Walmart disputed the reasonableness, necessity and causal relationship of the low back surgery to the June 13th work-related accident.[28]

After a comprehensive review of the evidence presented at the hearing, the Board granted Ms. Gallagher's Petition for Additional Compensation Due.

---

[28] Joint Stipulation of Facts (marked as "Tab 7" in the IAB Record; hereinafter "Jt. Stip."), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

The Board reviewed Ms. Gallagher's medical records beyond those relevant to her present injury and considered the medical expert testimony offered through the depositions of both Dr. Eskander and Walmart's expert, Dr. Andrew Gelman. Importantly, in assessing the testimony of the respective physicians' positions, the Board rejected Dr. Gelman's testimony, explaining it:

> . . . did not find Dr. Gelman credible. Among other contentions Dr. Gelman made, the Board rejects the contentions that [Ms. Gallagher] had poor prognosticators of not having a successful surgical outcome because the surgery relates to a worker's compensation claim and because [Ms. Gallagher] has an attorney representing her. The Board notes Dr. Gelman was selective during his direct testimony by not acknowledging that prior to rendering his initial opinion, he was aware of the low back references cited above in the ambulance records, the Concentra records of July 9, 2018, and the MedExpress medical records. Dr. Gelman, pursuant to his second defense medical examination, opined that [Ms. Gallagher]'s injury was limited to a sprain and strain that her lumbar radiculopathy diagnosis returned to baseline. The latter opinion is counter to the course of medical treatment. [Ms. Gallagher]'s burden of proof is relatively low. The Board is satisfied that Dr. Eskander's proposed fusion surgery is reasonable, necessary and causally related to the work accident.[29]

The Board acknowledged the compensability of the spinal fusion surgery and awarded payment of: (1) outstanding medical bills; (2) Ms. Gallagher's medical expert witness fees; and, (3) payment of a reasonable attorney's fees.[30]

---

[29] IAB Decision on Petition to Determine Additional Compensation Due at 26 (marked as "Tab 8" in the IAB Record; hereinafter "IAB Decision"), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

[30] *Id.* at 28.

Ms. Gallagher suffered a work-related, compensable injury, and the Board ordered Walmart to pay for reasonable and necessary medical services connected with that injury, including the spinal fusion surgery.[31] The Board concluded the proposed surgery was reasonable, necessary, and causally related to the Walmart work accident.[32]

Walmart filed a timely appeal to this Court and the matter has been fully briefed. In sum, Walmart argues: (1) that its due process rights were violated by the IAB's purported refusal to allow it to present certain evidence; and (2) the IAB erred in finding an implied agreement for compensation of an injury that was not covered in the earlier express agreements and final receipts.

## II. STANDARD OF REVIEW

This Court's authority to review appeals from the Board is governed by 29 *Del. C.* § 10142(d) which provides: "[t]he Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency."[33] Indeed, "[t]he limited role of . . . the Superior Court, when reviewing an appeal from the

---

[31] *Id.* at 25.

[32] *Id.*

[33] DEL. CODE ANN. tit. 29, § 10142(d) (2021).

IAB, is to determine whether the Board's decision is supported by substantial evidence and is free from legal error."[34]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35] Where the Board adopts one medical opinion over another—as is its prerogative when medical evidence is in conflict—the opinion adopted by the Board constitutes substantial evidence for purposes of appellate review.[36] But when that conflicting expert medical testimony is by deposition, the Board should provide "'specific relevant reasons' based on evidence in the record for accepting one expert's testimony over the other's."[37]

Now, when this Court reviews the record before the Board for substantial evidence it "must consider the record in the light most favorable to the party prevailing below, resolving all doubts in her favor"[38] and it will not weigh the evidence, determine questions of credibility, or make its own factual findings and

---

[34] *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

[35] *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[36] *Munyan*, 909 A.2d at 136.

[37] *Elliott v. State*, 2014 WL 3049504, at *4 (Del. Super. Ct. June 30, 2014) (citing *Rhinehardt-Meredith v. State*, 2008 WL 5308388, at *5 (Del. Dec. 22, 2008) (discussing *Lindsey v. Chrysler Corp.*, 1994 WL 7500345 (Del. Super. Ct. Dec. 7, 1994))).

[38] *Steppi v. Conti Electric., Inc.*, 2010 WL 718012, at *2 (Del. Mar. 16, 2010) (cleaned up).

conclusions.[39]  Because on appeals like this, only questions of law are reviewed *de novo*.[40]

This is all to say that where substantial evidence supports the IAB's decision, this Court must affirm the ruling unless it identifies an abuse of discretion or a clear error of law.[41]

### III.  PARTIES' CONTENTIONS

According to Walmart, the Board denied it due process of law by refusing to allow it to present evidence supporting defenses it intended to raise during the IAB hearing.  In the IAB Pre-Trial Memorandum, Walmart noted it intended to rely on "all legal arguments and defenses[,] including forfeiture defenses."[42]  To assert one, some or all of the potentially available defenses, Walmart said it needed to examine Ms. Gallagher "on her pre-existing history and prior accidents."[43]  Walmart says its hearing strategy was to demonstrate Ms. Gallagher's "lack of credibility and candor

---

[39]  *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965) ("On appeal from the Board, however, the Superior Court does not sit as a trier of fact with authority to weight the evidence, determine questions of credibility, and make its own factual findings and conclusions.").

[40]  *Munyan*, 909 A.2d at 136.

[41]  *Id.*; *see also Bolden v. Kraft Foods*, 2005 WL 3526324, at *2 (Del. Dec. 21, 2005) ("Where substantial evidence supports the administrative decision [of the IAB on a petition for additional compensation], this Court must affirm the ruling unless it identifies an abuse of discretion or a clear error of law.").

[42]  Appellant's Opening Br. at 20, *Walmart v. Gallagher*, N21A-07-003 PRW, Sept. 7, 2021 (D.I. 9).

[43]  *Id.*

in reporting her extensive pre-existing [medical] history"[44] which, it goes on, would call into question the necessity of the spinal fusion surgery recommended by Dr. Eskander.[45]

Walmart complains the Board also limited its ability to develop the factual bases for certain purported defenses by prodding counsel, on several occasions, to "move on" during the questioning of Ms. Gallagher.[46] Walmart insists the comments of the Board to "move on" impacted its ability to establish a civil forfeiture defense and a so-called *Nally*[47] argument. Walmart asserts at least one "Board Member had already reached a decision and was unwilling to hear any evidence to the contrary."[48] Walmart argues it was "denied the ability to put forth any of [its] defenses [as it] was unable to bring in the relevant evidence."[49]

Second, Walmart claims there was an implied agreement for compensation

---

[44]  *Id.*

[45]  *Id.*

[46]  *Id.*

[47]  That is, Walmart suggests the evidence or testimony it complains was excluded would have allowed it to argue that Ms. Gallagher's existing condition was actually a result of some pre-Walmart injury. *See Standard Dist. Co. Through Pennsylvania Mfrs. Ass'n Ins. Co. v. Nally,* 630 A.2d 640 (Del. 1993) (reiterating the "last injurious exposure" rule—which prescribes the appropriate methodology for determining successive carrier responsibility where there are alleges to have been multiple episodes of industrial accident-related injuries or changes in physical condition).

[48]  Appellant's Opening Br. at 21.

[49]  *Id.*

for only a certain type of injury—namely a lumbar strain. Walmart contends the Board abused its discretion in concluding the prior agreements between Ms. Gallagher and Walmart related to a "lumbar radiculopathy" diagnosis, thereby allowing the Board to award Ms. Gallagher benefits beyond the prior settlement for a lumbar strain.[50]

Ms. Gallagher asserts Walmart "was provided every opportunity to present all relevant and admissible evidence it desired."[51] Walmart, she says, made legal arguments supported by the evidence and the Board did not impede its counsel from questioning her.[52] According to Ms. Gallagher, the Board sustained just one of her objections and overruled all of her later objections, allowing Walmart to continue its cross-examination.[53] And the Board never instructed Ms. Gallagher not to answer questions on cross-examination nor refused to allow Walmart to ask Ms. Gallagher relevant questions.[54] In fact, says Ms. Gallagher, the Board allowed Walmart "to cross-examine [her] as long as it wanted," and Walmart's counsel "is the one that

---

[50] *Id.* at 29. It appears this claim was not raised in the hearing below.

[51] Appellee's Answering Br. at 16, *Walmart v. Gallagher*, N21A-07-003 PRW, Sept. 27, 2021 (D.I. 10).

[52] *Id.*

[53] *Id.* at 18.

[54] *Id.*

concluded the cross-examination."[55] Ms. Gallagher suggests that the Board considered all Walmart's legal arguments in its decision and its evidentiary rulings were correct and appropriate.

As to Walmart's second claim, Ms. Gallagher contends this litigation involves "a permanent impairment already acknowledged by written agreement and [Walmart] is attempting to argue that the injury is now resolved."[56] In Ms. Gallagher's view, the Board "did not determine that the surgery was reasonable, necessary and related because of the payment of medical treatment prior to the surgical recommendation."[57] Instead, the Board was addressing Walmart's request for the Board to revisit the compensability of treatment in the first place. Says Ms. Gallagher, because Walmart previously conceded the injury, it could not now deny the existence of an injury.[58] And, because Walmart previously conceded the injury was permanent, it could not claim it was "resolved."[59] Walmart paid for injections that their own expert "agreed were used to treat lumbar radiculopathy, so it could not now claim those injections were unrelated."[60] And, insists

---

[55] *Id.* at 19.

[56] *Id.*

[57] *Id*. at 20.

[58] *Id.*

[59] *Id.*

[60] *Id.*

Ms. Gallagher, the Board's ultimate determination of the reasonableness, necessity and causal relationship of the proposed surgery was based on the Board's own review of all the evidence at the hearing and "accepting Dr. Eskander's credibility over that of Dr. Gelman."[61]

## IV. DISCUSSION

A basic tenet of procedural due process is that litigants have the right to receive notice and to be heard "at a meaningful time and in a meaningful manner."[62] "While administrative hearings are not subject to all the same 'rules' as judicial proceedings, parties to administrative hearings are entitled to the protections provided" by core notions of due process.[63] But indeed, "what makes up due process" in a given situation "is a flexible concept, calling for the procedural protections each particular set of circumstances demands."[64] Just so in IAB hearings.

---

[61] *Id.*

[62] *Slawik v. State*, 480 A.2d 636, 645 (Del. 1984).

[63] *Eckeard v. NPC Int'l, Inc.*, 2012 WL 5355628, at *3 (Del. Super. Ct. Oct. 17, 2012).

[64] *Id. See also Vincent v. Eastern Shore Markets*, 970 A.2d 160, 164 (Del. 2009) (Observing in an IAB appeal: "Due process, unlike some legal rules, is not a technical notion with a fixed content unrelated to time, place, and circumstances; rather it is a flexible concept which calls for such procedural protections as the situation demands. As it relates to the requisite characteristics of the proceeding, due process entails providing the parties with the opportunity to be heard, by presenting testimony or otherwise, and the right of controverting, by proof, every material fact which bears on the question of right in the matter involved in an orderly proceeding appropriate to the nature of the hearing and adapted to meet its ends.") (internal citations omitted).

The Board is not bound by the formal rules of evidence.[65] Yet those rules are generally applied in Board hearings, subject to the exercise of the Board's discretion. Specifically, Industrial Accident Board Rule 14(C) provides:

> (C) The rules of evidence applicable to the Superior Court of the State of Delaware shall be followed insofar as practicable; however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent persons in the conduct of their affairs. The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion.[66]

Rule 14 allows the Board to fashion its own procedural rules or relax the rules of evidence to ensure the efficient administration of claims.[67] It's presumed "the Board, with its background and expertise, is able to evaluate evidence without the restrictions and safeguards imparted by the formal rules of evidence."[68]

But the Board's ability to operate under relaxed evidentiary rules is not without limit. "[T]he Board . . . may not . . . relax rules which are designed to ensure the fairness of the procedure. 'While the nature of the proceedings and the spirit of the Compensation Law justify some relaxation of the technical rules of evidence, nevertheless, it is fundamental that the right to confront witnesses, to cross-examine

---

[65] *Torres v. Allen Family Foods*, 672 A.2d 26, 31 (Del. 1995).

[66] Industrial Accident Board Rule 14(C).

[67] *Torres*, 672 A.2d at 31.

[68] *Id.*

them, to refute them, and to have a record of their testimony must be accorded unless waived.'"[69]  The rules applied—including that affording a right to cross-examine hearing witnesses—are designed to guarantee the substantial rights of the parties and are based on fundamental notions of fairness.[70]  And the IAB's exclusion of relevant, material and competent evidence—if done in a way that exceeds the bounds of reason in view of the circumstances or so ignores recognized rules of law or practice to the extent it produces injustice[71]—could present grounds for reversal if that evidence exclusion is unfairly prejudicial.[72]

## A. THE DUE PROCESS CLAIM

On December 14, 2020, Walmart filed a Pre-Trial Memorandum.[73]  In that memorandum, Walmart, without specificity, generally asserted the following defenses:

---

[69]   *Id.* (quoting *Gen. Chemical Div., Allied Chemical & Dye Corp. v. Fasano*, 94 A.2d 600, 601 (Del. 1953); *accord Air Mod Corp. v. Newton*, 215 A.2d 434, 439 (Del. 1965)).

[70]   *Id.* (citing 3 Arthur Lawson, *The Law of Workmen's Compensation* § 79.83(a) (1995)).

[71]   *See Willis v. Plastic Materials, Co.*, 2003 WL 164292, at *1 (Del. Super. Ct. Jan. 13, 2003); *Cooper v. Delaware Bd. of Nursing*, 2021 WL 754306, at *2 (Del. Super. Ct. Feb. 26, 2021) ("A board abuses its discretion where it exceeds the bounds of reason in view of the circumstances or ignores recognized rules of law or practice so as to produce injustice.") (cleaned up), *aff'd*, 2021 WL 4938135 (Oct. 21, 2021).

[72]   *Torres*, 672 A.2d at 31 (citing John Strong, et al. *McCormick on Evidence* § 352, 513 (4th ed. 1992)).

[73]   *See* Appellant's Response to Order, Ex. A, *Walmart v. Gallagher*, N21A-07-003 PRW, Feb. 24, 2022 (D.I. 14).

(a) "Any and all defenses applicable/available including caselaw, statutes, Larson's;"

(b) "Non-compliance with IAB Rules 9 -11;" and

(c) "19 *Del. C.* §§ 2343 and/or 2353; forfeitures may apply, AMA guides."[74]

In pursuit of one or more of these defenses, Walmart, at the start of Ms. Gallagher's cross-examination, broached what it described as "Ms. Gallagher's claim history"— *i.e.*, prior worker's compensation claims she allegedly made during the course of her employment history. By highlighting these prior claims, Walmart believed it could demonstrate Ms. Gallagher's "pre-existing history and lack of candor."[75]

Walmart's counsel specifically reviewed Ms. Gallagher's "vocational history," including when she worked for the following employers: Green Tweed Company, Central Sprinkler Company, Clements Markets, North Penn Adult Day Services, and Burlington Coat Factory.[76] Walmart asked Ms. Gallagher whether she "had worker's compensation claims with all those employers?"[77] Ms. Gallagher couldn't say she did. For instance, she didn't recall a workers' compensation claim

---

[74] *Id.* ¶ 13.

[75] Appellant's Opening Br. at 22.

[76] Hr'g Tr. at 28-29.

[77] *Id.* at 29.

for a "slip and fall" injury.[78]  She did recall, while working at Burlington Coat Factory, an incident where a "whole rack of clothing fell down on [her] and another worker."  But Ms. Gallagher didn't believe she had reported that incident to her employer, received any medical treatment for the event, or suffered any injury.[79]

Walmart then asked Ms. Gallagher about two workers' compensation claims it suggested Ms. Gallagher submitted to the Green Tweed Company—one a repetitive-motion injury to her foot; the other a repetitive-motion injury to her elbow.[80]  Ms. Gallagher didn't deny the injuries or claims but explained she was "only doing what I was told to do."[81]  Walmart then asked Ms. Gallagher about four workers' compensation claims she supposedly submitted to the Central Sprinkler Company, injuries to her back and foot—two in 1998 and two in 1999.[82]  Ms. Gallagher testified those injuries that occurred more than 20 years ago "weren't work related."[83]

---

[78]  *Id.*

[79]  *Id.* at 29-30.

[80]  *Id.* at 30.

[81]  *Id.*

[82]  *Id.*

[83]  *Id.*

Ms. Gallagher's counsel objected, and the following argument ensued:

Ms. Gallagher's
Counsel:                I have to object.   At this point, I do not believe [Walmart's Counsel] is referring to admissible evidence.   I think what she is referring to is a claims index search, which is not evidence.  And it has not been authenticated by anybody to prove that [the claims index] actually is accurate.  What those are are internal databases where adjustors put in information, and they do it sometimes when there is no treatment at all.   If somebody slips at work, says they feel some pain in their ankle.   They don't get any treatment.   The employer has to report it to the insurance company. They write right ankle.  I mean, I – at this point I don't believe [Walmart's Counsel] is referring to any medical records, because it certainly hasn't been discussed by any of the medical doctors.  And in my review of the records, I don't recall seeing any of that.  I think it is in a claims index search that is inadmissible.

Walmart's
Counsel:                My response to that is this is the Ms. Gallagher's claim history.  I am asking her to verify the accuracy of it.  She can indicate the accuracy of the claims history and go into the details that the Claimant attorney is indicating and can deny it or admit to it.   So, I think that it is entirely relevant, the fact that she has at least 11 workers compensation claims.  And she can accept or deny them here today.

Ms. Gallagher's
Counsel:                And how is it, in furtherance of my objection, how is a claim for a right ankle injury of any bearing to a low back acknowledged claim for the last two and a half years, when really what we are talking about is a medical opinion about the reasonableness, necessity, and causal relationship of the low back surgery. That— that is in addition to my objection as to the evidence itself.

| | |
|---|---|
| Walmart's Counsel: | And going to relevancy, her functional level (inaudible) some of the arguments I am going to be making today, this is all very relevant. I am asking for the Board to – |
| Hearing Officer: | These are over — |
| Walmart's Counsel: | — at this time. |
| Hearing Officer: | They're — they are going to be sustained. We are going to move on. |
| Walmart's Counsel: | Thank you.[84] |

Walmart never: addressed the substance of Ms. Gallagher's objection—that the source of the data it relied upon was an inadmissible claims index search; laid a proper foundation for the questions; nor established the relevance of the alleged worker's compensation claims with prior employers. Walmart never: identified the source of the reputed workers' compensation claims data; authenticated the source of the information it sought to admit; nor denied (or conceded) that it was the product of a claims index search. It also never argued that a claims index search would be admissible nor explained the relevance of questioning Ms. Gallagher about purported workers compensation claims that were more than two decades old.

---

[84] *Id.* at 30-32. The Hearing Officer also noted, on the record, that the claims were "over 20 years old." *Id.* at 32.

Under these circumstances, the Hearing Officer did not abuse her discretion in sustaining Ms. Gallagher's objection.

Ms. Gallagher's cross-examination continued, and Walmart's counsel focused her inquiry on Ms. Gallagher's medical records—from both before and after the June 13, 2018 injury—to suggest that Ms. Gallagher had a demonstrated pattern of underreporting (or misreporting) her medical history to a host of treatment providers, including Dr. Eskander. Walmart attempted through this examination to attack Ms. Gallagher's credibility in general and show that the medical history she provided at the hearing was not supported by the medical records contemporaneously created at the time she saw any given medical provider.[85]

Walmart specifically asked Ms. Gallagher about her medical and treatment history. That included inquiry on records that disclosed reported lower back issues (or the absence of same) from medical records created on the following pre-June 2018 dates: (1) June 12, 2009—Ms. Gallagher conceded she saw a doctor for injuries to her right wrist and lower back;[86] (2) August 15, 2009—Ms. Gallagher could not recall seeing her primary care physician complaining of low back pain

---

[85] In its Decision, the Board acknowledged Ms. Gallagher's credibility issues but didn't outright reject her testimony. IAB Decision at 25 ("The Board recognizes that Ms. Gallagher presented with credibility issues but they were not such to cause her to fail to meet her burden of proof.").

[86] Hr'g Tr. at 33-34.

after work at North Penn Adult Services;[87] (3) February 23, 2011—Ms. Gallagher did not recall visiting her primary care physician for complaints of back pain and left flank pain;[88] (4) March 20, 2015—reporting pain "in neck, back, shoulders and knees";[89] (5) a 2015 medical record—reporting an ankle/lower extremity injury;[90] (6) August 5, 2016—presenting for treatment of "depression and back pain";[91] (7) March 21, 2017—Records reflect Ms. Gallagher went to an emergency room in December 2016 for "back and lower extremity pain bilaterally");[92] (8) March 21, 2017—recommendation for an MRI of the back;[93] (9) December 2017—records indicate chronic conditions, including chronic right side back pain, chronic sciatica, obesity and depression;[94] and, (10) January 12, 2018—record indicating medication taken for back and knee pain.[95]

Walmart then focused on the purported defenses it set forth in the Pre-Trial Memorandum. The following exchange occurred:

---

[87] *Id.* at 34.

[88] *Id.*

[89] *Id.* at 32, 35.

[90] *Id.* at 39-40.

[91] *Id.* at 35.

[92] *Id.*

[93] *Id.* at 39.

[94] *Id.* at 36.

[95] *Id.* at 37.

Walmart's
Counsel:                Did you inform Walmart, at the time of hire, of all these medical conditions, and how they affected your function and ability to stand and walk, and lift?

Ms. Gallagher's
Counsel:                Objection. Objection. She hasn't established the basis as to the relevancy of this question. Again, I let a lot of this stuff go, because I understand the efficiency with these hearings, and the idea of allowing the admission of certain evidence, to get to the ultimate conclusion. But, at the end of the day, we are talking about an already acknowledged permanent injury to the lower back, and the reasonableness, necessity and causal relationship of a low back surgery. There is no other defenses that have been alleged, other than contesting the reasonableness, necessity and causal relationship of the low back surgery. So, I don't believe this line of questioning is relevant.

Walmart's
Counsel:                It is relevant. Again, I will be making my arguments, in closing argument, to explain why this is relevant. I am asking for deference from the Board. I have put on the pretrial I intend to rely upon all legal arguments and defenses in this case.

Ms. Gallagher's
Counsel:                So, there isn't an allegation that there is some sort of misleading of the Employer. Correct me if I'm wrong, because I am not the end all, be all, with workers compensation terminology, I believe that is similar to a forfeiture argument. If I am correct, I don't believe that any of that stuff was specifically disclosed. And if it was disclosed, I certainly would have established the evidence that would rebut it, in questioning the witness at the beginning. And I also probably would have established the—and maybe called additional witnesses on my end to rebut that.

| Walmart's Counsel: | 2353 is specifically pled on the pretrial memorandum. |
| --- | --- |
| Hearing Officer: | Yes. |
| Walmart's Counsel: | Which involves—which involves lots of different particular issues. Again, in a claim that has already been acknowledged—for two and a half years . . . . So, did you inform Walmart about these limitations and these physical problems, your function issues, prior to accepting this job position? |
| Ms. Gallagher: | No.[96] |

Walmart's counsel then questioned Ms. Gallagher about medical records and visits that occurred on or after June 13, 2018: (1) June 13, 2018—No mention of sciatica in the record);[97] (2) visit with Dr. Zeraphos—no mention of sciatica in the record, but Ms. Gallagher explained the pain she visited the doctor for was "not in the same location as my sciatica";[98] (3) August 22, 2018 (Dr. Xing)—no prior "injuries," noted, prior sciatica "resolved;[99] (4) December 19, 2018 (Dr. Xing)—released to

---

[96] Hr'g Tr. at 40-42. The record does not reflect Walmart offered any evidence at the hearing to establish, that, at the time Ms. Gallagher was hired, it inquired whether Ms. Gallagher had a disability or condition that would have disqualified her from employment, or informed Ms. Gallagher that a particular functional level or physical condition was necessary for the position for which she was hired. On re-direct examination, Ms. Gallagher testified that when she started working at Walmart in June 2016 she "did not have an ongoing disability that prevented [her] from doing any type of work." *Id.* at 82. And confirmed that—if she had, in fact, had such an ongoing disability and if Walmart had asked—she would have told Walmart about it. *Id.* at 83.

[97] *Id.* at 43.

[98] *Id.* at 46.

[99] *Id.* at 64-65.

return to work full duty, without restrictions, and Ms. Gallagher went back to work full time, without restrictions;[100] (5) July 17, 2019—Ms. Gallagher no longer has constant pain in back, radicular symptoms in lower extremity;[101] (6) October 1, 2020—Ms. Gallagher's pain is reported to be a two, on a scale of one to ten;[102] and, (7) April 8, 2021—Ms. Gallagher's pain is reported to be a two, on a scale of one to ten.[103]

Walmart next questioned Ms. Gallagher on her responses to questions in the Industrial Accident Board Statement of Facts Upon Failure to Reach an Agreement ("Statement of Facts").[104]  Walmart's counsel pointed out several omissions and errors in the answers on the form.[105]  One final point made by Walmart—Ms. Gallagher claimed at the hearing that she did not believe she had reached maximum medical improvement from her injury, but had to concede that in September 2020 she reported she had "reached maximum medical improvement."[106]

---

[100] *Id.* at 66.

[101] *Id.*

[102] *Id.*

[103] *Id.* at 67.

[104] IAB Statement of Facts Upon Failure to Reach an Agreement (marked as "Tab 4" in the IAB Record; hereinafter "Statement of Facts"), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

[105] Hr'g Tr. at 70-74.

[106] *Id.* at 75.

Walmart then, of its own accord, ended its cross-examination of Ms. Gallagher.[107] And Walmart declined to ask her any questions after her re-direct examination.[108]

Walmart's due process claim is based solely on the Board's conduct during Ms. Gallagher's cross-examination. And that record just doesn't support its due process claim. To the extent Walmart's cross-examination was limited, it was only limited after counsel argued their respective positions on the admissibility of what was described as a claims index search and the establishment of defenses noted in the pretrial memorandum. The Board applied the rules of evidence when Ms. Gallagher objected and found the claims index search inadmissible. All other objections by Ms. Gallagher's counsel were overruled in Walmart's favor.

Even given its most generous read, Walmart's argument for admissibility of evidence at the Board hearing never directly addressed the objection made or cited to one rule of evidence. Instead, Walmart's counsel represented that she intended to wait until closing argument to reveal the relevance of a particular item of evidence; counsel then asked for patience or deference from the Board, and summarily referred to Walmart preserving the right to assert "all legal arguments and defenses."[109] And,

---

[107] *Id.* at 78.

[108] *Id.* at 89.

[109] *See, e.g.*, *id.* at 32 ("And going to relevancy, her functional level (inaudible) some of the arguments I am going to be making today, this is all very relevant. I am asking for the Board to -

during cross-examination when the Board suggested to Walmart some testimony it was interested in eliciting from Ms. Gallagher and that it believed would assist its decision,[110] the Board did not unduly or unreasonably restrain Walmart's counsel's questioning. In fact, immediately after the Board suggested counsel "move on" to another line of questioning, she resumed querying Ms. Gallagher on her medical records—specifically, the August 22, 2018 and December 19, 2018 records from Dr. Xing,[111] a medical record from July 17, 2019,[112] and Ms. Gallagher's visits with Dr. Eskander on October 1, 2020, and April 8, 2021.[113] Walmart then confronted Ms. Gallagher with the Statement of Facts and questioned her about her answers to specific items on the form.[114] Several other claim-related documents were then discussed on the record until Walmart's counsel, by choice, concluded her cross-

---

- at this time."); *Id.* at 41 ("It is relevant. Again, I will be making my arguments, in closing argument, to explain why this is relevant. I am asking for deference from the Board. I have put on the pretrial I intend to rely upon all legal arguments and defenses in this case."); *Id.* at 55 (Okay, well, I apologize here, but I am just going to say this prior to the [spinal] injections, Okay? And I need to put on the case and build the evidence. I—I don't know [how] else to do this. I'm sorry, I've been doing this 30 years, and under due process, I am allowed to put on my evidence. So, I would just ask for your patience, because I think it will all come together.").

[110] One Board member explained, "I'm saying that I'm looking for the history of her medical history from the time of the accident and—and [what] support Walmart has given her from that point." *Id.* at 53.

[111] *Id.* at 64-66.

[112] *Id.* at 66.

[113] *Id.* at 66-67.

[114] *Id.* at 70-74.

examination.[115]

Walmart now suggests that this Court's decision in *Hy-Point Dairy Farms v. Dumire and IAB*,[116] supports its argument that the Board denied her due process. Not so.

In *Hy-Point*, the IAB hearing "proceeded in a somewhat unconventional manner."[117] There the Board permitted the *Hy-Point* claimant to testify in narrative form, uninterrupted, for several minutes.[118] When the Board started asking questions, the claimant "went on long, unresponsive soliloquies irrelevant to the issues under discussion."[119] The Board eventually lost patience with that claimant and began asking her leading questions while concurrently "cutting her off when she offered unresponsive answers."[120] The Board "concluded the claimant's testimony" and then failed to give the employer an "opportunity to freely tell Hy-Point's side of the story."[121] The Board concluded the *Hy-Point* hearing without: (1) determining

---

[115] *Id.* at 81.

[116] 2004 WL 2827864 (Del. Super. Ct. Dec. 6, 2004).

[117] *Id.* at *2.

[118] *Id.*

[119] *Id.*

[120] *Id.*

[121] The Court noted the Board "appeared interested only in whether [the witness] was an owner of the company, and whether she was privy to any conversations between [the claimant] and [a part-owner of the company]." *Id.*

-28-

if Hy-Point's own witness had concluded her testimony; (2) ascertaining whether she wanted to present any other evidence for the record; or , (3) giving the employer "a real chance to present evidence or asking her a relevant question."[122]  This Court concluded the Board "failed to provide Hy-Point a meaningful chance to present its own evidence or rebut [the claimant's evidence] . . . the Board became exasperated with [the claimant's] ramblings and neglected its duty to hear both sides of the case and reach a fair and impartial decision."[123]

Unlike the Board in *Hy-Point*, here the IAB gave the employer a meaningful opportunity to present evidence, make arguments, and question Ms. Gallagher. Other than one sustained objection, all other objections by Ms. Gallagher's counsel were overruled.  The Board can hardly be described as having appreciably limited Walmart's questioning of Ms. Gallagher.  While the Board may have encouraged Walmart's counsel to "move on," counsel continued to conduct her examination of Ms. Gallagher as she saw fit, ended the examination on her own accord, and didn't ask any questions on re-cross.

Thereafter, Walmart entered Dr. Andrew J. Gelman's deposition testimony into evidence.  Dr. Gelman was Walmart's medical expert who testified in specific detail about Ms. Gallagher's medical record history and his several physical

---

[122]  *Id*. at *3.

[123]  *Id.*

examinations of Ms. Gallagher. Walmart's counsel provided Dr. Gelman a list of Ms. Gallagher's medical providers.[124] Dr. Gelman then reviewed Ms. Gallagher's medical records from 31 separate medical providers and detailed the contents of those prior medical records.[125] Responding to leading questions on direct examination during the deposition, Dr. Gelman highlighted omissions and discrepancies within and among the records.[126] Under these circumstances, Walmart was afforded the opportunity to ask Dr. Gelman about any of Ms. Gallagher's medical records it may have failed to ask Ms. Gallagher about during her testimony.

In the Decision, the Board referred to approximately 35 of Ms. Gallagher's medical records. Its Decision demonstrates that the Board considered the testimony of Ms. Gallagher, Dr. Eskander, and Dr. Gelman. In short, the Board afforded Walmart a full and fair opportunity to be heard. And the Court can identify no abuse of discretion in the hearing conducted by the IAB—*i.e.* nothing that exceeded the bounds of reason in view of the circumstances nor any Board action that ignored recognized rules of law or practice so as to produce injustice or prejudice to Walmart.

---

[124] *See* Dep. Tr. of Dr. Andrew J. Gelman, D.O. (marked as "Tab 6" in the IAB Record; hereinafter "Gelman Tr."), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

[125] *Id.*

[126] While the Board allowed Dr. Gelman's testimony, it "disapprove[d]of the attorney testifying during direct testimony through leading questions." IAB Decision at 13, n. 1.

## B. IMPLIED AGREEMENT FOR COMPENSATION CLAIM

In Walmart's second argument, it contends the Board erred in finding an implied agreement for compensation of an injury that was not in the express agreements and final receipts between Walmart and Ms. Gallagher. Walmart says it, as employer, reached an agreement with Ms. Gallagher as to compensation for just certain limited injuries from the June 13, 2018 work incident. In Walmart's view, that settlement was a valid contract through which the parties agreed only that Ms. Gallagher's "injury and permanency in question related to a 'lumbar strain.'"[127]

Walmart insists now that the Board "abused its discretion when it considered extrinsic evidence (medical bills) to change the injury agreed upon by both parties to 'lumbar radiculopathy.'"[128] This change, it is argued, impermissibly allowed the Board to go beyond prior permanency determinations already agreed-to and to improperly award additional compensation to Ms. Gallagher—that being the costs of surgery approved by the Board.

Ms. Gallagher counters that the specific petition tried before the Board here involved a permanent impairment of function that Walmart previously acknowledged by entering into a written agreement but that Walmart now contends

---

[127] Appellant's Opening Br. at 27.

[128] *Id.*

is "resolved."[129] And, Ms. Gallagher says, the Board found no implied agreement as to radiculopathy via payment of Ms. Gallagher's medical treatment to date, but instead made its determination after examining all the hearing evidence and concluding Dr. Eskander's testimony more credible and persuasive than Dr. Gelman's.[130]

The Statement of Facts and the hearing transcript establish that the issue before the IAB was whether Ms. Gallagher's spinal fusion surgery was a compensable procedure that was necessary because of the June 2018 work-related incident at Walmart based on the then-available medical evidence.

When concluding its cross-examination of Ms. Gallagher, Walmart questioned her about settling a permanency claim on September 14, 2020.[131] Ms. Gallagher objected as to relevance.[132] And Walmart responded thusly:

Walmart's
Counsel:    Part of [Ms. Gallagher] attorney's argument is trying to make some argument that these payments, and some type of agreement has locked Walmart into [the] inability to make any alterations or objections to that agreement. And my response to part of that, if we are going to go to closings, is to reflect what [Ms. Gallagher], the nature and extent of the injury that both [Ms. Gallagher] and her attorney, since she was

---

[129] Appellee's Answering Br. at 19.

[130] *Id*. at 20-21.

[131] Hr'g Tr. at 75.

[132] *Id.*

represented, agreed to by reflecting what is on the agreements and receipts signed by parties in this case.

Hearing Officer: Well, this—this hearing isn't scheduled for challenging the agreements that are signed. That—that's not what is at issue before the Board. Is that what you are trying to do?

Walmart's
Counsel: I'm not trying to challenge—

Hearing Officer: No, I'm asking a question—I'm asking. I—I mean, is that what you are trying to do? I was—I was looking through the file, so quite frankly, when you raised the objection, I didn't hear what the—what the question was to—

Ms. Gallagher's
Counsel: So, counsel wants to—wants to ask questions related to the agreement and Receipt of Permanent Impairment Benefit. The position that I have taken is that Dr. Gelman's opinion onto the resolution of the injury is not appropriate as [Walmart] has already paid for and acknowledged the last two and a half years of treatment, and they have executed an Agreement as to a permanent impairment in the amount of seven percent, to the lumbar spine. (inaudible) without prejudice—

Walmart's
Counsel: No, that's not true.

Ms. Gallagher's
Counsel: Okay. Well, then show an agreement that is not signed —I mean that I have an agreement that is signed. So.

Hearing Officer: This isn't—this is not the opportunity to challenge agreements that are—we have these agreements. I am looking at them. They are signed. That's not even an issue before the Board. That—that wasn't even what the petition was about. This isn't the opportunity to challenge an agreement saying that it's not an

-33-

agreement, for whatever reason it might be. The issue is—is regarding the surgery, and not trying to—

Walmart's
Counsel:      —the parties in this case have signed an agreement indicating nature of injury is a lumbar strain, not a lumbar spinal disk injury. And that is, the seven percent permanency acknowledged was for a lumbar strain, not a disk injury. That's what the agreements reflect. I am not trying to challenge the agreement. I am trying to show what the parties agreed to, in this case.

Hearing Officer: Well, then you can just raise it that simply. I—I didn't hear what all this line of questioning is, but you can just —actually just get to the point and raise it—that simply.

Walmart's
Counsel:      Okay. Well, then I would like the Board to take judicial notice of the Agreements and Receipts in this case, both for total disability and for permanency, which are signed, with witness[es] from [Ms. Gallagher]'s attorney's office, as recently as September—October timeframe, which reflected that the acknowledged injury in this case is a lumbar strain, not a spinal injury, not a disk injury. So. And with that, I conclude my case —my questioning.[133]

Walmart later argued that the earlier permanency agreements confirm that Ms. Gallagher's Walmart-related injury was only "a lumbar strain. You don't have surgery for a lumbar strain."[134] In Walmart's view, therefore, it could not be held responsible for "a permanent ongoing surgical problem."[135] And so, insists Walmart,

---

[133] *Id.* at 76-78.

[134] *Id.* at 146.

[135] *Id.*

the IAB abused its discretion by misconstruing its argument and misusing the evidence of the prior agreement—in tandem with other evidence—to grant additional compensation for the proposed surgery. But that's not what the Board did.

The complete record demonstrates that the Board examined, *inter alia*, the very documents—the September and October 2021 agreements and treatment receipts—Walmart asked that it take judicial notice of and consider when deciding this compensability matter. The agreements alone spell out that Ms. Gallagher's June 13, 2018 accident from "stacking sales floor/[at Walmart's] premises" caused a "lumbar strain" and also describes—in two places—that the result is a "7% permanent disability to the lumbar spine."[136] No doubt, this was but one bit of competent evidence the Board considered when it determined whether the admitted permanent disabling injury now required further compensable surgical treatment.

Again, this Court does not sit as a trier of fact with authority to weigh the evidence, determine questions of credibility, and make its own factual findings and conclusions.[137] Rather, the Court must take "due account of the experience and specialized competence of the Board and of the purposes of our workers'

---

[136] Office of Workers' Compensation Agreement as to Compensation (marked as "Tab 5" in the IAB Record; hereinafter "Compensation Agreement"), *Walmart v. Gallagher*, N21A-07-003 PRW, Aug. 13, 2021 (D.I. 5).

[137] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).

compensation law."[138]  The Court can discern no abuse of discretion nor any clear error of law in the Board's reliance, in part, on the very documents Walmart proffered.  In turn, the Court must affirm the IAB's ruling that additional compensation was now due for the surgical treatment sought.[139]

## **CONCLUSION**

The Board afforded Walmart due process during the hearing to determine whether Ms. Gallagher's planned surgical treatment was compensable.  Walmart has failed to demonstrate that the Board excluded relevant, material and competent evidence from the hearing.  Nor did the Board impede Walmart's ability to fully develop the record, to offer evidence in support its preferred defense(s), or to cross-examine Ms. Gallagher.  Indeed, the Board acknowledged that the record Walmart developed did call into question Ms. Gallagher's credibility.[140]  But in the end, after weighing all the evidence, the Board determined that additional compensation was due.

---

[138]  *Histed v. E.I. DuPont de Nemours & Co.*, 621 A.2d 340, 342 (Del. 1993).

[139]  *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

[140]  IAB Decision at 25.  The Board's Decision acknowledged concerns with the credibility of Ms. Gallagher but concluded that any credibility concerns were not fatal to her claim.  Specifically, "the Board recognize[d] that Ms. Gallagher presented with credibility issues[,] but they were not such as to cause her to fail to meet her burden of proof."  *Id.*

The Board's Decision is supported by substantial evidence, free from legal error, and was not infected by any abuse of the Board's discretion. And so, the Board's Decision must be **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ *Paul R. Wallace*

**Paul R. Wallace, Judge**